**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Douglas WILSON, Donald Scott Smith, Carl Lee Woodworth, James Michael Levine, John Lee Howard, Leigh Bruce Ritch, Defendants-Appellants.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Lee HOWARD,**
**Defendant-Appellant.**

**Nos. 87–3458, 88–3678.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 20, 1990.

Daniel F. Martinez, David A. Dee, Stull and Heidt, P.A., Tampa, Fla., for defendants-appellants.

Robert Merkle, U.S. Atty., Tampa, Fla., Joseph Magri, U.S. Atty., Robert T. Kennedy, Asst. U.S. Atty., Denver, Colo., for the U.S.

Theda James, Asst. Federal Public Defender, Tampa, Fla., for James Michael Levine.

Raymond E. LaPorte, Tampa, Fla., for John Lee Howard.

Henry Lee Paul, Lazzara, Caskey, Polli, Gillick and Paul, Robert P. Polli, Tampa, Fla., for Leigh Bruce Ritch.

Mark P. Bryan, Clearwater, Fla., for James Douglas Wilson.

Before HATCHETT and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

COX, Circuit Judge:

The appellants, James Wilson, James Levine, Leigh Ritch, John Howard, Carl Woodworth, and Donald Smith, and seventeen other defendants were charged in a multiple count indictment with several drug related offenses. The charges included two counts of engaging in a continuing criminal enterprise, six counts of conspiracy to import marijuana, one count of conspiracy to possess with intent to distribute marijuana, three counts of conspiracy to import cocaine, one count of conspiracy to possess with intent to distribute cocaine, and five substantive counts of drug importation and distribution. Following a nine week jury trial, the appellants were convicted on multiple counts. They appeal their convictions on nine different grounds. Appellants Howard, Levine and Ritch also challenge the district court's denial of their motion for a new trial on the basis of newly discovered evidence, and the district court's denial of their motion to vacate their sentences under 28 U.S.C. § 2255. For reasons set forth herein, we vacate that portion of the order of the district court denying the appellants' section 2255 motion. We affirm on all other issues.

I. FACTS

We present only a brief overview of the facts here; the facts most pertinent to each issue are discussed separately.

The convictions in this case arise from a large drug smuggling operation, headed by defendant Steven Kalish and defendant-appellant Leigh Ritch. From 1981 through 1985, under the guidance of these leaders, the actors in this operation smuggled massive quantities of marijuana and cocaine from South America into the United States and then distributed it throughout the country. The operation included seven dif-

ferent ventures: the *Lady Mauricette* load, the *Bobby M* load, the *Bulldog* operation, the Shreveport load, the Masterblaster load, the Dallas conspiracy, and the *Seamaid* load.

### 1. The *Lady Mauricette* Load

The defendants acquired a shrimper named *Lady Mauricette* in Louisiana and outfitted it with sophisticated electronic devices and refrigeration units designed to store marijuana. In June of 1982, the *Lady Mauricette* was taken to the northern coast of Colombia and loaded with thirty thousand pounds of marijuana. The vessel then sailed to the coast of North Carolina, where the contraband was to be off-loaded and shipped to Michigan. The plan was foiled the following month, however, when the shrimper was apprehended and seized off the North Carolina coast. Appellants Ritch and Wilson were convicted of conspiracy to import approximately thirty thousand pounds of marijuana in connection with this venture.

### 2. The *Bobby M* Load

Having determined that the off-load sites in North Carolina had not been detected in the *Lady Mauricette* seizure, the defendants decided to try again in the fall of 1982. Another shrimper, the *Bobby M,* was acquired and outfitted in Texas, loaded with more than thirty thousand pounds of marijuana in Colombia, and successfully off-loaded at the planned site in North Carolina. From North Carolina the marijuana was transported by trucks to a warehouse in Detroit, Michigan, and then sold to various distributors throughout the country. Appellants Ritch and Wilson were convicted of conspiracy to import and conspiracy to possess with intent to distribute thirty thousand pounds of marijuana in connection with the *Bobby M* venture. Appellant Levine was also convicted of the conspiracy to import charge but acquitted of the conspiracy to possess charge.

### 3. The *Bulldog* Operation

In this venture, the defendants located and outfitted a tug and barge in the Domin-

ican Republic. In the spring of 1983, the vessels were taken to Colombia and loaded with 280,000 pounds of marijuana. They then travelled to Louisiana, successfully off-loaded 220,000–240,000 pounds of the cargo onto tractor trailer trucks, and transported it to Ohio. In Ohio the contraband was stored in farmhouses and warehouses and eventually distributed. Drug enforcement officials later seized the tug and barge, which contained about 35,000 pounds of marijuana that had not been unloaded. To celebrate the success of the venture, many of the participants took a week long cruise in the Caribbean. With the profits from this venture, Kalish and Leigh Ritch also purchased a yacht and a Lear jet. In connection with this venture, Ritch and Wilson were convicted of conspiracy to import, importation, and conspiracy to possess with intent to distribute 280,000 pounds of marijuana. Ritch was also convicted of possession with intent to distribute, a charge of which the jury acquitted Wilson.

### 4. The Shreveport Load

Certain of the defendants next acquired an airplane and in the spring of 1984, used it to import one thousand kilograms of cocaine from Colombia into Shreveport, Louisiana. In Shreveport, the load was placed in several vehicles and then driven to Tampa. Some of the load was taken to Miami. For this incident, Ritch and Wilson were again convicted of conspiracy to import twelve hundred kilograms of cocaine, importation of one thousand kilograms of cocaine, conspiracy to possess with intent to distribute, and possession with intent to distribute cocaine.

### 5. The Masterblaster Load

In 1984, Leigh Ritch and Steven Kalish also planned to import more than 500,000 pounds of marijuana into the United States via the tug, the *Seamaid,* and the barge, the *Guzzetta 100.* The *Guzzetta 100* was to be loaded in Colombia, transported up the Mississippi River, and off-loaded in St. Louis, Missouri. The operation was cancelled after Kalish's arrest in the summer

of 1984. Leigh Ritch was convicted of conspiracy to import 500,000 pounds of marijuana in connection with the Masterblaster venture. The district court granted Wilson's motion for judgment of acquittal on this charge.[1]

### 6. The Dallas Conspiracy

Pressured by investors to continue the smuggling operation after the failure of the Masterblaster venture, some of the defendants arranged to smuggle more than one thousand kilograms of cocaine into the United States in the spring of 1985. An airplane was to be loaded in Colombia and flown into the Albuquerque, New Mexico area. Shortly before the plane was to depart for Colombia to pick up the cargo, however, some of the key participants were arrested and the plan was aborted. Leigh Ritch was convicted of conspiracy to import one thousand kilograms of cocaine for his role in this venture.

### 7. The *Seamaid* Load

In the summer and fall of 1985, appellant Leigh Ritch arranged to import 165,000 pounds of marijuana from Colombia into the Norfolk, Virginia area. The same tug and barge involved in the aborted Masterblaster venture transported the contraband to the Virginia coast, where another tug, the *Eagle*, was to trade places with the *Guzzetta 100* and pull the barge ashore. The *Eagle* was captained by appellant Popp and crewed by appellants Woodworth and Smith. Authorities stopped both vessels in the waters off the coast of Virginia before the exchange transpired. Ritch, Levine, Howard, Popp, Smith, and Woodworth were convicted of attempting to import 165,000 pounds of marijuana in connection with the incident. Ritch, Levine and Howard were also convicted of conspiracy to import this quantity of marijuana for their roles in the venture. Popp, Smith and Woodworth were acquitted by the jury of this conspiracy charge.

## II. GROUNDS OF APPEAL

### A. VERDICT BY ELEVEN PERSON JURY

■ On the sixth day of the jury's deliberations, a Friday, a member of the jury became ill, causing the district court to dismiss the jury early for the weekend. That Sunday evening, the juror telephoned the court clerk to inform him that she would be unable to deliberate on Monday because of her continuing illness. She explained that she had an abscessed tooth and that due to her pregnancy, it could not be treated with medication. She expressed hope that she would be able to return on Tuesday.

Upon reconvening of the court on Monday, the district judge voiced his doubt that the juror would return the next day and stated that the juror's poor health had been a matter of concern to him on more than one occasion throughout the trial. Over the appellants' objections, the district court excused the juror for just cause pursuant to Fed.R.Crim.P. 23(b) ("Rule 23(b)")[2] and instructed the remaining eleven jurors to

---

**1.** The indictment also charges that in the spring of 1984, the defendants conspired to import an additional load of cocaine into the United States from Colombia. According to the government, the defendants acquired a plane for this purpose and stored it at a hangar in Shreveport, which was the same hangar used in the Shreveport venture. The plane developed a fuel leak, however, and authorities were summoned to the hangar, causing the defendants to abandon that site. According to the government, the defendants then attempted to locate new sites for the venture over the next few months. Kalish's arrest allegedly prevented the fruition of the conspiracy. Kalish, Ritch and Wilson were the only defendants charged in connection with this alleged venture. The district court granted Wilson's motion for judgment of acquittal on this count, and the jury acquitted Ritch on this count. The charge against Kalish was dropped pursuant to his plea agreement with the government.

**2.** Fed.R.Crim.P. 23(b) provides that if the court determines that just cause exists to excuse one or more jurors after the trial commences and before the verdict is rendered, the parties may, with the court's approval, stipulate to a jury of less than twelve persons. On August 1, 1983, this rule was amended to include the following: "Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors."

resume their deliberations. The jury returned a unanimous verdict the following day.

All the appellants contend that the district court erred in accepting the verdict of eleven jurors. Several of the appellants argue on appeal that Rule 23(b) is unconstitutional in that it violates their right to a unanimous verdict and their Sixth Amendment right to a twelve person jury. Appellants Ritch, Howard and Wilson argue that Rule 23(b)'s application to their conduct prior to August 1, 1983, the date the rule was amended to allow the court to dismiss a juror for just cause despite the parties' objections, violates the Ex Post Facto clause of the Constitution. Art. I, § 9, cl. 3. These claims were never presented to the trial court, however, and may not be raised for the first time on appeal. *Cotton v. U.S. Pipe & Foundry Co.*, 856 F.2d 158, 162 (11th Cir.1988).

All appellants also argue that the district court abused its discretion in dismissing this particular juror for "just cause."[3] The appellants claim that the district court invoked Rule 23(b) too hastily—that it should have waited until the following day, Tuesday, to see if the juror would return as she had hoped. They contend that pursuant to *United States v. Essex*, 734 F.2d 832 (D.C.Cir.1984), the district court had an affirmative duty to investigate the juror's absence by contacting the juror or her doctor. They further argue that she might have been the lone holdout juror and that the district court erred by not inquiring of the remaining jurors whether this was so.

The decision to dismiss a juror for just cause is within the discretion of the district court and will not be reversed absent an abuse of that discretion. *See* Fed.R. Crim.P. 23(b) (stating that "if the court finds it necessary to excuse a juror for just cause ... *in the discretion of the court*, a valid verdict may be returned by the remaining 11 jurors.") (emphasis added); *United States v. Stratton*, 779 F.2d 820,

832 (2nd Cir.1985). We have examined the record and cannot say that the district court abused its discretion in determining that just cause existed to dismiss this juror. The trial transcript indicates that the attorneys and the district judge were concerned about the health and comfort of this juror several times during the trial. Periodically throughout the course of the nine week trial, this juror left the proceedings abruptly. At one point, counsel advised the judge that the juror appeared to be ill and that she was crying. When she was late for court on another occasion due to a flat tire, the other jurors reported that she had been feeling ill on the previous day. A few days later, this juror informed the court that she had been taken to the hospital the previous evening, that her doctor was afraid that she might miscarry her baby, and that she needed to visit him again. The district court thus recessed the trial the following afternoon to accommodate her request.[4] Based on these incidents, when she again became ill during the deliberations, the district judge was entitled to conclude that she might not return the following day as she had hoped, and that even if she did she might become ill again, further delaying the deliberations. We note that the record does not present even the slightest basis to believe that this juror was a holdout juror or that the jury had reached any sort of impasse in its deliberations.

The appellants also urge that under *United States v. Essex*, 734 F.2d 832 (D.C. Cir.1984), the trial judge had an affirmative duty to contact the juror or her physician to investigate her absence before excusing her. We disagree. In *Essex* the trial judge decided to proceed with eleven jurors after one did not appear one morning for deliberation. As far as the record indicated, the court made no investigation regarding the missing juror: no one attempted to locate him or determine the reason for his absence. Indeed, there was "nothing in the transcript to indicate that the

---

**3.** This argument was presented to the district court and thus is preserved for our review.

**4.** The district judge also had another outside commitment that would have caused him to recess early that afternoon even if this juror had not needed to see the doctor.

court ever 'excused' the juror. The court just permitted the jury of 11 to proceed with its deliberations." *Essex,* 734 F.2d at 839 n. 9. In reversing the trial court, the D.C. Circuit stated that it was the "court's clear duty to determine the whereabouts of the missing juror and make a finding that there was *just cause* for excusing him." *Id.* at 842 (emphasis in original). Unlike the facts of *Essex,* in the instant case the district court made a clear finding of just cause on the record. This was not a case in which the juror failed to appear without explanation; she notified the court clerk of the reason for her absence. Based on this report and the juror's history of illness throughout the trial, sufficient inquiry was made of her whereabouts. Under these circumstances, the trial judge did not abuse his discretion in accepting an eleven-juror verdict.

## B. NEW TRIAL MOTION

■ In addition to filing notices of appeal from their convictions after the district court's entry of final judgment, appellants Howard, Ritch and Levine filed a timely Fed.R.Crim.P. 33 motion for a new trial on the ground of newly discovered evidence.[5] They argued that they were entitled to a new trial because Kalish, a codefendant, was interviewed by and provided information to the government prior to pleading guilty after approximately six weeks of trial. Additionally, they contended that Kalish was incarcerated in the same cell as appellant Ritch and hence was privy to the trial strategy ultimately utilized by defense counsel. This infiltration of the defense camp, according to the appellants, violated their "rights under the First, Fourth, Fifth and Sixth Amendments and [their] right to a fair trial under due process of law." 4SR–771–5.

The district court denied the motion on grounds that the evidence was not newly discovered and would not probably have produced an acquittal had it been presented to the jury. The district court explained that the defendants were on notice of Kalish's cooperation with the government at the time of his plea, midway through the trial, and yet did not raise any of the allegations contained in the motion at that time. The district court then stated that these allegations were "more appropriately raised in a 28 U.S.C. § 2255 motion" and that it would therefore construe the motion as such. 3SR–790–2. Without conducting an evidentiary hearing, the court denied the section 2255 motion on grounds that the appellants had only alleged that the government *may have been in a position* to act unlawfully—not that the government had actually engaged in any wrongdoing. Appellant Howard filed a second notice of appeal from the district court's denial of his new trial motion and section 2255 motion.[6] Although appellants Levine and Ritch did not file second notices of appeal from the district court's post-trial rulings, they also argue on appeal that the district court erred in denying their new trial motions.[7]

■ The threshold question we consider is whether a second notice of appeal is required in order for Levine and Ritch to challenge the district court's denial of their motions for a new trial. No party has raised this issue in their briefs or at oral argument. We recognize that it is clearly the better practice to perfect a separate appeal from the denial of a motion for a new trial on the ground of newly discovered evidence. *See Richardson v. United States,* 360 F.2d 366 (5th Cir.1966); Wright, Federal Practice and Procedure: Criminal 2d § 559 (1982). However, when faced with a similar situation in *United States v. Hersh,* 415 F.2d 835 (5th Cir.1969), the Fifth Circuit allowed the appellant's brief,

---

5. Appellant Howard actually filed the new trial motion. Appellants Levine and Ritch filed a motion to adopt Howard's new trial motion, which the district court granted.

6. In his appellate brief to this court, Wilson also adopts the arguments of his co-appellants regarding the district court's denial of the new

trial motion. Wilson, however, never joined in the new trial motion and hence cannot challenge the denial of it on appeal.

7. This second appeal has been consolidated with the former appeals challenging the appellants' convictions.

which dealt with the denial of his motion for a new trial, to serve as a substitute for a separate notice of appeal. The precise issue was later addressed at length in *United States v. Burns,* 668 F.2d 855 (5th Cir.1982). Reasoning that the second notice of appeal in a case like this is "literally a 'notice' requirement," the *Burns* court concluded that "[w]ithout a showing of prejudice against the government, it would be unreasonable and unfair to refuse to consider an issue which was thoroughly briefed and clearly recognized as an issue by both parties...." *Id.* at 858. We agree. Because the government was not prejudiced in this case by Levine and Ritch's failure to file a separate notice of appeal from the district court's denial of their new trial motion, they may also challenge the district court's post-trial rulings on appeal.

■ To prevail on a motion for a new trial based on newly discovered evidence, a defendant must satisfy the following four-part test: (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material and not merely cumulative or impeaching; (3) the evidence must be of the type that will probably produce an acquittal; and (4) the defendant's failure to learn of the evidence must not be the result of lack of diligence. *United States v. Sjeklocha,* 843 F.2d 485, 487 (11th Cir.1988). The decision to grant or deny the new trial motion is within sound discretion of the trial court and will not be overturned on appeal unless "the ruling is so clearly erroneous as to constitute an abuse of discretion." *Id.* The trial court should utilize " 'great caution' " in granting a new trial motion based on newly discovered evidence. *Id.* (quoting *United States v. Johnson,* 713 F.2d 654, 661 (11th Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984)).

■ The district court did not abuse its discretion in denying appellants' new trial motion on grounds that the evidence was not newly discovered and would not have produced an acquittal. We hold that the district court did err, however, in construing the new trial motion as a motion to vacate sentence under 28 U.S.C. § 2255 and then ruling upon it. In *Welsh v. United States,* 404 F.2d 333 (5th Cir.1968), this circuit established that "[a] motion to vacate sentence under 28 U.S.C. § 2255 will not be entertained during the pendency of a direct appeal, inasmuch as the disposition of the appeal may render the motion moot." *Id.* at 333. Because the appellants had a direct appeal from their convictions pending before this court at the time the new trial motion was filed, the district court should not have entertained the new trial motion as a section 2255 motion. We therefore vacate that portion of the district court's order construing the new trial motion as a section 2255 motion and then denying the section 2255 motion.[8] We affirm that portion of the order denying the new trial motion.

## C. JOINDER AND SEVERANCE

Appellants Levine and Howard argue that their joinder with other defendants in a single indictment violated Fed.R.Crim.P. 8(b). Levine, Howard, Woodworth, Popp and Smith argue that the district court abused its discretion in denying their motions for severance under Fed.R.Crim.P. 14. Because alleged violations of Rule 8(b) and Rule 14 are evaluated under different standards, we examine these claims separately.

### 1. *Joinder*

■ Rule 8(b) provides that "[t]wo or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). In contrast to a Rule 14 claim, which accepts that initial joinder is proper but asserts that a joint trial is prejudicial, a Rule 8(b) claim "questions the propriety of joining two or more defendants in a single indictment in

---

**8.** We vacate this portion of the district court's order without prejudice to the defendants' right to file a § 2255 motion after disposition of the direct appeal.

the first instance." *United States v. Morales*, 868 F.2d 1562, 1567 (11th Cir.1989). The issue of whether joinder is proper under Rule 8(b) is a question of law subject to plenary review by this court. *Id.*

■ We recently established that we examine only the allegations on the face of the indictment to determine if the appellants' initial joinder was proper under Rule 8(b). *Id.* at 1567–68. In order to meet the "same series of acts or transactions" requirement of Rule 8(b), the "government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." *Id.* at 1569. Each participant need not have been involved in every phase of the venture, however, and each participant need not know each of the other participants' roles and identities. *United States v. Andrews*, 765 F.2d 1491, 1496 (11th Cir.1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986).

■ Applying this Rule 8(b) analysis to this case, we perceive no misjoinder of appellants Howard and Levine. The indictment contained eighteen counts. The first was a continuing criminal enterprise charge under 21 U.S.C.A. § 848 (1981) against defendant Leigh Ritch and alleged that counts three through eighteen were part of the same continuing series of violations managed by Ritch. The second was a continuing criminal enterprise charge against Steven Kalish and alleged that counts three through fifteen were part of the same continuing series of violations managed by Kalish. Levine was charged in counts four, five (the *Bobby M* Load) and seventeen and eighteen (the *Seamaid* Load) of the indictment; Howard was charged in counts seventeen and eighteen. All of the offenses which make up the indictment are factually similar: all of them involve the large-scale importation of marijuana and cocaine from Colombia into the United States. There is also a substantial, although not a complete overlap of participants: Leigh Ritch is charged in ev-

ery count, Kalish is charged in every count except seventeen and eighteen, and many defendants are charged in multiple counts. We thus hold that initial joinder was proper under Rule 8(b).[9]

### 2. Severance

■ Howard, Levine, Woodworth, Popp and Smith assert that the district court erred in denying their motions for severance under Rule 14. They contend, in essence, that the evidence adduced at trial against them was minimal in comparison with the evidence adduced against their co-defendants and that they were prejudiced by the "spill-over" effect of the evidence against their co-defendants. They also argue that the jury was unable to separate the evidence as it related to each count of the indictment.

■ We review the district court's denial of a motion for severance under Rule 14 for an abuse of discretion. *United States v. Meester*, 762 F.2d 867, 874 (11th Cir. 1985), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). In order for the appellants to succeed with this claim, they must demonstrate that they suffered "compelling prejudice" from the trial court's refusal to sever. We have defined "compelling prejudice" in this context as "the jury's inability to separately appraise [sic] the evidence as to each defendant and render a fair and impartial verdict." *Id.* at 883.

In this case, the district court clearly and specifically instructed the jury at the outset of the trial that each defendant and each offense were to be given separate consideration. The district court repeated this instruction at the end of the trial when it charged the jury prior to deliberations. Additionally, throughout the course of the trial, the court instructed the jury as to which count of the indictment a witness's testimony was relevant, to what charge that count pertained, and which defendants were charged in that count. The jury's

9. In *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the Supreme Court established that a rule 8(b) claim is subject to the harmless error rule. Because we conclude that joinder is proper in this case, we do not reach this second prong of the rule 8(b) analysis.

verdict, which acquitted appellants on some charges while convicting them on others, clearly demonstrates the jury's ability to consider each defendant and each charge separately. Accordingly, we affirm the district court's denial of the appellants' Rule 14 motion.

## D. MOTION TO SUPPRESS EVIDENCE OBTAINED IN WARRANTLESS SEARCH

 Appellant Leigh Ritch also claims that the district court erred in denying his motion to suppress incriminating evidence obtained by the government in a warrantless search of the vehicle he was driving. He argues that the search was made without probable cause, in violation of his Fourth Amendment rights.

We review the district court's denial of a motion to suppress evidence as a mixed question of law and fact. *United States v. Alexander*, 835 F.2d 1406 (11th Cir.1988). The district court's findings of fact are viewed under the clearly erroneous standard; its application of the law to those facts is subject to de novo review. *Id.* at 1408. In considering the ruling on the suppression motion, we construe the facts in the light most favorable the party who prevailed below—in this case, the government. *Id.*

 Although a search undertaken without a warrant based upon probable cause generally constitutes a *"per se"* Fourth Amendment violation, government agents may conduct a warrantless search of an automobile if "(1) there is probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under law, and (2) exigent circumstances necessitate a search or seizure." *Id.* at 1409.

 We thus initially consider whether probable cause existed to search appellant Ritch's vehicle for evidence of illicit drug activities. " '[W]hen the facts and circum-

stances would lead a reasonably prudent [person] to believe that the vehicle contains contraband,' " probable cause exists. *Id.* (quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977)). We focus not on each fact in isolation but " 'the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers.' " *Clark*, 559 F.2d at 424 (quoting *Smith v. United States*, 358 F.2d 833, 837 (D.C.Cir.1966)). Moreover, when a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause. *United States v. Esle*, 743 F.2d 1465, 1476 (11th Cir.1984).

The totality of circumstances in this case indicates that the detectives had probable cause to search Ritch's vehicle. Ritch and Landis were accompanying Kalish when Kalish was arrested, just one and one half hours before the search took place. After his arrest, detectives from the county sheriff's department were dispatched to Kalish's residence to secure it while officials obtained a search warrant for the residence. Upon their arrival at the residence, they noticed that a Chevrolet Blazer was in the garage and that the garage door was being lowered. Shortly thereafter, the door opened and the Blazer began to depart from the scene. The detectives at the scene relayed these observations to their supervisor, who was in contact with the government attorney handling the case, and were instructed to stop the vehicle. Upon stopping the vehicle, they discovered that Ritch and Landis were inside, and that several suitcases and a computer were in plain view.[10] They again relayed this information to their superior. Based on the information which formed the basis of the probable cause for the search warrant of Kalish's residence,[11] the government attor-

10. Both Ritch and Landis claimed not to know to whom the vehicle belonged.

11. The affidavit that formed the basis of probable cause of the search warrant for the house was supplied by special agents of the Federal Bureau of Investigation and the Drug Enforcement Administration and revealed that Kalish was a member of a drug-trafficking organization that was in the midst of distributing cocaine, that certain of these distribution activities

ney advised them to search the vehicle. Under these circumstances and considering the collective knowledge of the officials conducting the investigation, there was probable cause to believe that the Blazer contained some evidence of narcotics trafficking.

We also agree with the court below that the government satisfied the exigency prong of the automobile exception. The vehicle was departing from the residence, and vital evidence could be lost or destroyed if it were not searched immediately.[12] Accordingly, we affirm the district court's denial of Ritch's motion to suppress.

## III. CONCLUSION

After a thorough review of the record, we find that the remaining arguments raised by the appellants are without merit and warrant no discussion. The district court's judgment denying appellants' section 2255 motion is VACATED; in all other respects the appellants' convictions are AFFIRMED.

---

were carried out from this residence, that the organization was using a computer in connection with these activities, and that Kalish and others were planning a massive cocaine importation and were utilizing computers in connection with this scheme.

12. Additionally, we note that Ritch filed his motion to suppress after the trial commenced, claiming that he was never informed, prior to trial, that the search was without a warrant. The motion was untimely and also deniable on this ground. *See* Fed.R.Crim.P. 12(f).