UNITED STATES of America,
Plaintiff–Appellee,

v.

Reginald Bernard HARRIS, a/k/a
"Reggie", Defendant–Appellant.

No. 89–8586.

United States Court of Appeals,
Eleventh Circuit.

April 18, 1991.

---

Sonja J. Salo, Atlanta, Ga., for defendant-appellant.

Deborah A. Griffin, Michael T. Solis, Asst. U.S. Attys., Macon, Ga., for plaintiff-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the district court's denial of a motion to suppress evidence seized during the roadside search of a vehicle whose driver law enforcement officers suspected of violating traffic laws. 716 F.Supp. 1470 (1989).

## FACTS

On March 26, 1989, Dooly County, Georgia, Deputy Sheriff Craig Peavy parked his patrol car (facing north) under the Exit 36 bridge on Interstate 75 in Dooly County to perform stationary radar surveillance on southbound traffic. At approximately 10:55 a.m., Peavy noticed a 1989 Dodge Dynasty travelling north on Interstate 75, "run off the edge of the road" into the emergency lane. Peavy followed the car. While following the car, Peavy saw the car again weave over the edge of the emergency lane. Concerned that the driver of the car might be drunk or falling asleep, Peavy stopped the car.

Reginald Harris, driver of the Dodge Dynasty, and the appellant in this case, walked to the back of the car and gave Peavy his driver's license. Peavy explained to Harris the reason for stopping him, and asked whether he had been drinking alcohol. Harris said he had not been drinking, and Peavy did not smell any alcohol on his breath. Peavy then asked Harris if he had run off the road because he was tired, or because he had looked back at Peavy. Harris responded that "he was both tired and was also watching [Peavy]." When asked whether he owned the car, Harris answered that he had rented it. The rental agreement listed Harris as the primary driver and a "Fred Williamson" as an additional driver. When asked whether he had come from Florida, Peavy thought that Harris "said something which sounded like yes." Peavy then asked Harris what part of Florida, and Harris said that he "dropped a friend off in Valdosta," Georgia, and had not been to Florida.

According to Peavy, Harris was "shaking" and seemed "extremely nervous." Because a red stamp on Harris's driver's license stated "Limited Permit," Peavy told Harris that he was going to run a computer check on the license. Peavy then requested that Harris sit in the Dodge Dynasty

(since his knee was hurting) while Peavy ran a check on Harris's license.

While in his car, Peavy radioed Georgia State Patrol Trooper Steve Strickland for assistance. Peavy also radioed the Georgia State Patrol in Cordele, Georgia, and requested a check on Harris's license. In the meantime, Peavy wrote a warning ticket, which he intended to give to Harris, for driving on the edge of the emergency lane. Shortly thereafter, the Georgia State Patrol advised Peavy that Harris had a restricted driver's license which Harris could only use legally for work purposes.

Peavy gave Harris the warning ticket and informed him that his license was restricted for work purposes only. Since it was Easter Sunday, however, Peavy told Harris that he would show him some consideration. Immediately thereafter, Peavy asked Harris if he could look in the car to make sure everything was "okay." Harris responded, "No sir, I don't want you to look." Peavy then asked Harris why he would not show a little cooperation since Peavy had shown him "consideration on his license." When Harris asked Deputy Peavy why the officer wanted to look in the car, Peavy told him to "make sure there wasn't any illegal drugs, a weapon or any contraband in the car." Harris then said, "Go ahead and look." Trooper Strickland, who was also present when consent was given, confirmed that when asked by Harris why Peavy wished to search the car, Peavy "advised illegal contraband."

With Harris standing beside Trooper Strickland, Peavy searched the interior of the car. Peavy then took the keys out of the ignition and opened the trunk. In the trunk, Peavy found four pieces of luggage including a red bag and a black nylon zipper bag. Peavy unzipped the red bag and found ten kilograms of cocaine. Peavy and Strickland then searched Harris and placed him in the back seat of Strickland's patrol car. Subsequently, Peavy opened the black nylon zipper bag and found nine kilograms of cocaine.

## PROCEDURAL HISTORY

A grand jury charged Harris, along with Fredel Williamson, in a three-count indictment with conspiracy to possess with intent to distribute nineteen kilograms of cocaine, possession with intent to distribute nineteen kilograms of cocaine, and interstate transportation and concealment of nineteen kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. §§ 1952 and 2. The district court severed Williamson's case from Harris's case.

Harris filed a motion to suppress all physical evidence. After an evidentiary hearing, the district court denied the motion to suppress. On July 19, 1989, following a non-jury trial, the district court convicted Harris on all counts.

## CONTENTIONS

Harris contends that the district court erred when it denied his motion to suppress. According to Harris, reasonable suspicion did not exist to support the stop and the investigatory detention was not sufficiently limited in scope and duration. Further, Harris contends that the search of the car exceeded the bounds of his consent.

In response, the government contends that the district court properly denied Harris's motion to suppress. The government maintains (a) that the stop was reasonable under the circumstances, (b) that the investigative detention was for a short time and based on reasonable suspicion that criminal activity may have been afoot, and (c) that the search did not exceed the bounds of the consent.

## ISSUES

We address the following issues:

(1) whether the district court erred when it found the stop to be valid;

(2) whether the district court properly found Harris's detention to be lawful; and

(3) whether the district court erred when it concluded that the search did not exceed the bounds of the consent.

## DISCUSSION

I. Standard of Review

■ We review the district court's denial of Harris's motion to suppress evidence as

a mixed question of law and fact. *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir.1990). "The district court's findings of fact are viewed under the clearly erroneous standard; its application of the law to those facts is subject to de novo review." *Wilson*, 894 F.2d at 1254.

## II. The Stop

■ A law enforcement officer "may conduct a brief investigative stop of a vehicle, analogous to a *Terry*-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir.1990). An investigatory stop which is solely based upon "inarticulate hunches" or "unparticularized suspicion" is invalid. *Terry v. Ohio*, 392 U.S. 1, 22, 27, 88 S.Ct. 1868, 1880, 1883, 20 L.Ed.2d 889 (1968). Further, "investigatory stops are invalid as pretextual unless 'a reasonable officer *would* have made the seizure in the absence of illegitimate motivation.'" *Strickland*, 902 F.2d at 940 (quoting *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986)) (emphasis in original).

In denying Harris's motion to suppress, the district court concluded:

> After considering the evidence presented here, the court is persuaded that a reasonable officer would have made this stop absent an illegitimate motive. The testimony showed that Harris weaved into the emergency lane on two separate occasions during a one-mile stretch on Interstate 75. Deputy Peavy did not make the stop until Harris weaved the second time. A reasonable officer would have concluded that Harris was either driving under the influence in violation of state law, or falling asleep at the wheel. Since the stop would have been justified under either conclusion, it was not unconstitutional.

Relying upon our decision in *Smith*, Harris argues that the district court erred when it upheld the validity of the stop. In *Smith*, we found an investigative stop, based upon a "drug courier profile," to be supported by only an "inarticulate hunch" and, therefore, insufficient to justify a seizure under the fourth amendment. *Smith*, 799 F.2d at 707. Further, we held that Smith's weaving once into the emergency lane, when considered in the context of other objective evidence, provided only a pretextual basis for the stop. *Smith*, 799 F.2d at 709–11. In reaching this conclusion, however, we carefully noted that we were not holding that an officer could "not consistently with the fourth amendment stop a vehicle under similar circumstances to investigate for drunk driving." *Smith*, 799 F.2d at 711 n. 10.

*Smith* is distinguishable from this case. In *Smith*, the law enforcement officer who made the stop (1) began pursuit before he observed any weaving, (2) made no attempt to investigate the possibility of intoxication after he stopped the car, and (3) described the car as being driven with an "abundance of caution ... indicat[ing] that the stop was unrelated to any possible concern with traffic safety." *Smith*, 799 F.2d at 710–11. Further, Smith only crossed into the emergency lane once. Finally, the district court expressly found that "the weaving of the car was a pretext for the stop." *Smith*, 799 F.2d at 706 n. 2.

No such facts are present in this case. First, Harris weaved across the emergency lane twice, once before Peavy decided to follow the car and again after Peavy began following the car. Second, when Peavy stopped Harris he investigated whether Harris was intoxicated or falling asleep. Third, Peavy testified that he routinely stops cars where the driver is weaving. Finally, the district court found that a reasonable officer would have concluded that Harris was either driving under the influence of alcohol, in violation of state law or falling asleep at the wheel. Because we find (1) that reasonable suspicion supported Peavy's decision to stop Harris, and (2) that a reasonable officer would have stopped Harris in the absence of an invalid purpose, we hold that the district court did not err when it found the stop to be valid.

## III. The Detention

■ In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1

(1989), the Supreme Court, following *Terry*, held that a police officer "can ... briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). "*Sharpe* teaches that in distinguishing a true investigative stop from a *de facto* arrest, we must not adhere to 'rigid time limitations' or 'bright line rules,' but must use 'common sense and ordinary human experience.'" *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir.1988) (quoting *Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989).

Harris contends that the district court erroneously upheld the constitutionality of his detention. According to Harris, the investigatory detention was not sufficiently limited in duration because he should have been allowed to leave after Peavy gave him the warning ticket for weaving. The district court found that "the detention was for a very short time" and that "reasonable suspicion" existed that criminal activity may have been afoot.

We hold that the district court did not err when it denied Harris's motion to suppress on this basis. Peavy was justified in stopping and detaining Harris to determine whether he was drunk or falling asleep at the wheel. Further, Peavy did not act unreasonably by detaining Harris to ascertain the validity of his driver's license. Where, as here, "'the initial stop was legal, the [officer] had the duty to investigate suspicious circumstances that then came to his attention.'" *Hardy*, 855 F.2d at 757 (quoting *United States v. Cruz*, 581 F.2d 535, 539 (5th Cir.1978) (en banc)). Similarly, we cannot say that Peavy acted unreasonably by momentarily detaining Harris, after giving him the warning ticket, to request his consent to search the car. Harris was: (1) driving a rental car with a restricted license; (2) "shaking" and acting "extremely nervous"; and (3) gave conflicting responses as to where he had been. Under these circumstances, where Peavy acted on reasonable suspicion and only detained Harris for a short period of time (prior to his arrest when Peavy found the cocaine), we hold that Harris's detention did not violate the fourth amendment's prohibition against unreasonable seizures.

**IV. The Search of the Car**

■ A search conducted pursuant to consent is a recognized exception to the requirements of probable cause and a search warrant. *United States v. Baldwin*, 644 F.2d 381, 383 (5th Cir.1981). "When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." *Strickland*, 902 F.2d at 941.

■ Harris contends that the district court erred when it found that Peavy did not exceed the scope of the consent when he entered the trunk and searched the luggage. In reaching its conclusion, the district court found:

First, there was no evidence to rebut the officers' testimony that Harris verbally agreed to the search.

\* \* \* \* \* \*

He made no attempt to limit the search before it began. Moreover, he did not attempt to prohibit Deputy Peavy from searching the trunk or from opening the travel bags.

We hold that Peavy reasonably interpreted the scope of Harris's consent. Peavy offered uncontradicted testimony that Harris did not specifically limit the area that he could search. More importantly, Harris was physically present while Peavy searched the car, and had ample opportunity to limit the scope of the search, or

request that it be discontinued. No evidence exists to the contrary.

In this case it is also significant that Harris knew that Peavy was looking for drugs. Because Harris knew Peavy was looking for drugs, this case is controlled by *United States v. Kapperman,* 764 F.2d 786 (11th Cir.1985). In this case and in *Kapperman,* the defendant knew the officer was looking for drugs; therefore, both defendant and the officer would reasonably interpret the consent as constituting consent to search in places where narcotics would reasonably be hidden. In both cases, no evidence indicated that the defendants intended to limit the scope of the search.

Following oral argument in this case, the Supreme Court issued its decision in *Florida v. Wells,* —— U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). In that case, a Florida Highway Patrol trooper arrested Wells for driving under the influence of alcohol. After the trooper informed Wells that his car would be impounded, Wells gave the trooper permission to open the trunk. Under the trooper's direction, employees at the impoundment facility opened a locked suitcase, which was in the trunk of the car, and found a considerable amount of marijuana.

The Supreme Court, in affirming the Florida Supreme Court, held that this inventory search "was not sufficiently regulated to satisfy the Fourth Amendment" because "the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search." *Wells,* 110 S.Ct. at 1634. The Court based this conclusion on the following reasoning:

> an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'

*Wells,* 110 S.Ct. at 1633–34 (quoting *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring)).

*Wells* has no application to this case. First, Harris's car was not impounded at the time of the search, and Peavy did not search the car for the purpose of producing an inventory (to either protect himself or Harris's possessions). Second, Harris, as previously noted, was present when Peavy opened the trunk and searched his luggage, and could have stopped Peavy at any time, thereby averting the possibility of "general rummaging in order to discover incriminating evidence." *Wells,* 110 S.Ct. at 1634.

## CONCLUSION

In sum, we hold that the district court properly denied Harris's motion to suppress. Accordingly, Harris's conviction and sentence are affirmed.

AFFIRMED.