[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14986

Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00003-CR-AAA-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIBURCIO GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(July 9, 2008)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Tiburcio Garcia appeals his conviction for possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). He contends that in denying his motion to suppress cocaine recovered from the intake manifold of his truck and statements he made to the police, the district court erred by deciding that: (1) probable cause existed for the initial traffic stop; (2) the traffic stop was not unreasonably extended; (3) Garcia consented to the search of his truck; (4) the search did not exceed the scope of Garcia's consent; and (5) Garcia had been advised of his Miranda rights and his waiver was not tainted by improper coercion.

We generally apply a mixed standard of review to the denial of a defendant's motion to suppress, reviewing the district court's findings of fact only for clear error and its application of law to those facts de novo. United States v. Jiminez, 224 F.3d 1243, 1247 (11th Cir. 2000). However, because Garcia did not object to the magistrate judge's report and recommendations with respect to the motion to suppress, we review only for plain error the five issues he raises concerning the denial of that motion. See United States v. Hall, 716 F.2d 826, 829 (11th Cir. 1983). Under plain error review, "an appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an

2

appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks and citations omitted). An error is "plain" if "it is obvious and clear under current law." United States v. Eckhardt, 466 F.3d 938, 948 (11th Cir. 2006), cert. denied, 127 S. Ct. 1305 (2007).

## I.

Garcia first contends that the district court erred by concluding that probable cause existed for the initial traffic stop. There was no indication of a lane violation, he argues, and the officer decided to stop his truck only for a possible window tint violation. According to Garcia, the government offered no evidence that his window tinting was unlawfully dark, the officer failed to actually test the window tinting after arresting him, and the window tinting did not appear as dark as the tinting on many new cars. Garcia argues that these facts show that the officer had no probable cause for the stop.

Georgia law makes it "unlawful for any person to operate a motor vehicle" that has material and glazing on the rear windshield or side window that reduces "light transmission through the . . . window to less than 32 percent . . . or increase[s] light reflectance to more than 20 percent." Ga. Code Ann. § 40-8-73.1(b). Georgia law also requires vehicles to stay within one lane as much

as practicable.  Id. § 40-6-48(1).

"[T]he constitutional 'reasonableness' of a traffic stop is determined irrespective of 'intent,' either of the individual officer involved or any theoretical 'reasonable officer' . . . . The only question is whether the suspect's behavior gave rise to probable cause sufficient to justify the seizure."  Riley v. City of Montgomery, Ala., 104 F.3d 1247, 1252 (11th Cir. 1997) (citing Whren v. United States, 517 U.S. 806, 811–18, 116 S. Ct. 1769, 1773–76 (1996)).  "[A] traffic stop is a constitutional detention if it is justified by . . . probable cause to believe a traffic violation has occurred."  United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003).  "A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment."  Id. at 1276.  "Thus, if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable," and great deference is given to the judgment of the officer.  Id.  However, "a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop."  Id. at 1279.

The district court did not err, much less plainly err, by finding that probable cause existed for the traffic stop.  At the time he decided to stop Garcia's truck, Officer Threat knew that:  (1) Georgia law prohibited excessively tinted windows;

4

(2) he could not see inside the vehicle; and (3) he could not see the driver. This information was sufficient to lead a reasonable officer to believe that Garcia had violated Ga. Code Ann. § 40-8-73.1(b) by operating a motor vehicle with window tinting that exceeded the allowable limits. Accordingly, the district court correctly concluded that Officer Threat had probable cause for the stop, regardless of whether the tinting was actually illegal. See Chanthasouxat, 342 F.3d at 1275; Riley, 104 F.3d at 1252. In addition, before Officer Threat stopped Garcia's vehicle, he observed Garcia fail to maintain his lane in violation of Ga. Code Ann. § 40-6-48(1). This violation also provided Officer Threat with probable cause for the stop. See Riley, 104 F.3d at 1252.

## II.

Garcia next contends that Officer Threat unreasonably extended the traffic stop. He argues that his nervousness and desire to end the traffic stop were not sufficient to provide reasonable suspicion to extend the stop. Additionally, he argues that, given his language problems, his slowness in responding to the questions did not provide Officer Threat with the required reasonable suspicion.

"[A]n officer's actions during a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place," and the stop "may not last any longer than necessary to process the traffic violation

5

unless there is articulable suspicion of other illegal activity." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (internal quotation marks and citations omitted). "[W]e have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion" to extend a traffic stop. United States v. Perkins, 348 F.3d 965, 971 (11th Cir. 2001). Asking questions while still in the process of writing out a citation or awaiting the response of a computer check, however, does not extend the duration or scope of a valid initial seizure. Purcell, 236 F.3d at 1279–80 (rejecting argument that an officer "exceeded the scope of a permissible traffic stop when he asked [the defendants] whether they had guns, firearms, or narcotics in their car"). When examining the reasonableness of a traffic stop, the length of time before consent is given to search is also relevant. See id. at 1278–79 (concluding that "[f]ourteen minutes is not an unreasonable amount of time for a traffic stop").

The district court did not err, much less plainly err, by deciding that the scope and duration of the traffic stop in this case were reasonable. Officer Threat asked Garcia questions while he was gathering information and filling out the paperwork for the warning citations he planned to give Garcia for the window tinting and lane violations, and Garcia gave Officer Threat permission to search the

6

vehicle after only six minutes from the time he was pulled over. While Garcia's nervousness alone would not have been sufficient to extend the stop, see Perkins, 348 F.3d at 971, because the stop was brief and the questioning occurred while the officer was filling out the warning citation paperwork, Officer Threat did not unreasonably extend the scope or duration of the stop, see Purcell, 236 F.3d at 1278–80.

## III.

Garcia next contends that his consent to search was not free, voluntary, and intelligent. He argues that language problems impacted his ability to consent, even though he understands and speaks conversational English.

"The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures by law enforcement authorities of the United States government." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Id. (internal quotation marks and citations omitted) (omission in original). "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to

7

voluntary consent." Id. "The government bears the burden of proving . . . that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).

"'[V]oluntariness is a question of fact to be determined from all the circumstances' when evaluating the validity of a consent to search." Garcia, 890 F.2d at 358 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248–49, 93 S. Ct. 2041, 2058–59 (1973)).

> In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.

Purcell, 236 F.3d at 1281. "In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police." United States v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999).

The district court did not plainly err in finding that Garcia voluntarily consented to the search of the vehicle. Without prompting Garcia gave the officer permission to search the vehicle, and the officer confirmed this consent both verbally and in writing. See Purcell, 236 F.3d at 1281. Additionally, there is no

8

indication that Garcia lacked sufficient comprehension of English to voluntarily consent to the search. He told Officer Threat that he spoke English and he responded appropriately in English to the questions asked by Officer Threat and other officers who later arrived on the scene. See Zapata, 180 F.3d at 1242.

IV.

Garcia also contends the scope of the search exceeded his consent. He argues he gave consent for the officers only to look in the truck, not to dismantle part of its engine.

"[A] search is impermissible when an officer does not conform to the limitations imposed by the person giving consent." Id. "A general consent to search for specific items includes consent to search any compartment or container that might reasonably contain those items." Id. at 1243. "While we have held that a search exceeds the scope of consent when an officer destroys a vehicle, its parts, or its contents, a search does not exceed the scope of consent merely because an officer forces open a secured compartment that reasonably may contain the objects of the search." Id. (internal citation omitted) (distinguishing a valid search of an interior door panel from an invalid search during which an officer slashed open a spare tire). The person who gave consent can also limit the scope of a search as it is occurring, or request that it be discontinued. See United States v. Harris, 928

9

F.2d 1113, 1117–18 (11th Cir. 1991).

In this case, the officers informed Garcia that they were searching for drugs, which the officers knew were sometimes hidden in the intake manifold of Dodge truck's like Garcia's. Garcia did not put any limitations on his consent to search the truck, he did not object when the officers started examining the engine, and the officers did not damage the manifold during their search. Accordingly, the district court did not err, much less plainly err, in determining that the officers did not exceed the scope of Garcia's consent to search. See Zapata, 180 F.3d at 1242–43; Harris, 928 F.2d at 1117–18.

V.

Finally, Garcia contends that the statements he made while in custody were not freely given, and that he was not properly advised of his constitutional rights. He argues that the officer did not read him his Miranda rights before questioning him, and that he never signed a form waiving those rights. Furthermore, Garcia argues that any responses he made to questions were tainted by an improper promise of benefit.

"The district court's ultimate conclusion on the voluntariness of a confession, or the waiver of Miranda rights, raises questions of law to be reviewed de novo." United States v. Barbour, 70 F.3d 580, 584 (11th Cir. 1995) (citations

10

omitted).  "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

The threshold inquiry in determining whether a waiver of Miranda rights is valid is whether the defendant was informed of his Miranda rights.  Barbour, 70 F.3d at 585.  Next, the relinquishment of one's Miranda rights must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  Id. (citations omitted).  "The coerced-confession inquiry looks at the state of mind of the suspect—'whether [a suspect's] will was overborne' by the totality of the circumstances surrounding the giving of a confession."  Tinker v. Beasley, 429 F.3d 1324, 1328 (11th Cir. 2005) (alteration in original) (quoting Schneckloth, 412 U.S. at 226, 93 S. Ct. at 2047). The defendant must also make the waiver with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (citations omitted).  "Although a waiver cannot be presumed from a silent record, it need not be explicit and can be inferred from the totality of the circumstances."  Sullivan v. Alabama, 666 F.2d 478, 483 (11th Cir. 1982) (citations omitted).

The district court found that Garcia had been read his <u>Miranda</u> rights and concluded that he had voluntarily waived them. At the hearing on Garcia's motion to suppress, Officer Threat testified that he had personally observed his supervisor read Garcia his <u>Miranda</u> rights, and another officer testified that Garcia told him that he had been read his rights. In addition, the officers testified that Garcia appeared to understand his rights, did waive those rights, and agreed to speak to several officers. The district court found this testimony to be credible, and we find nothing in the record to suggest that we should not defer to this credibility determination. See <u>Ramirez-Chilel</u>, 289 F.3d at 749.

Moreover, there is nothing in the record that suggests that Garcia's decision to waive his rights was involuntary. The only evidence of a potential improper promise of benefit was a statement by one of the officers who questioned Garcia that Garcia could "try to help himself" by talking. However, there is no indication that Garcia's will was overborne by that statement because, although Garcia answered questions about his health, he continually refused to provide information about the source of the cocaine, stating only that "they will kill me." Accordingly, the district court did not plainly err by concluding that Garcia voluntarily waived his rights and that the waiver was not tainted by improper coercion. See <u>Tinker</u>, 429 F.3d at 1328; <u>Barbour</u>, 70 F.3d at 585.

12

**AFFIRMED.**