[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.   11-14746
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cr-00183-MEF-CSC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR SIERRA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 17, 2012)


Before BARKETT, PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Cesar Sierra appeals the district court's denial of his motion to suppress,

arguing that he was stopped for a traffic infraction based on his ethnicity in violation of the Equal Protection Clause of the Fourteen Amendment,  was detained longer than necessary during the stop, and did not voluntarily consent to the officer's search of his vehicle. After careful review of the briefs and the record, we affirm.

## I.

A police officer saw Mr. Sierra's eighteen wheeler cross the fog line several times while it was traveling on an interstate near Montgomery, Alabama. Because of this improper lane use, the officer stopped the truck to make sure that the driver was not under the influence or sleepy from driving more hours than truckers are permitted to travel per day. The officer asked Mr. Sierra for his license, registration, and driver's logbook, which contained no entries for the preceding twenty hours. He saw chicken bones on the passenger-side floorboard of the truck and noticed several things about Mr. Sierra: his hands were shaking, his carotid artery was pulsating, and his breathing was rapid and labored. These signs of nervousness did not decrease even after the officer told Mr. Sierra he was getting a warning instead of a ticket.

The officer asked Mr. Sierra to come back to his police car so that he could write up the warning citation, run a warrant check, and verify information about the truck. When the checks came back clean, the officer wrote out the warning citation and handed it, along with his other documentation, to Mr. Sierra, who was sitting in

2

the front passenger seat of the police cruiser pursuant to the officer's request. As Mr. Sierra moved to get out of the police car, the officer inquired whether he could ask Mr. Sierra another question. Mr. Sierra agreed and stayed in the car, leaving the door partially open. After explaining that he was a part of a highway safety team that, in addition to patrolling for traffic violations, watched out for the transportation of stolen property, weapons, and drugs, the officer asked Mr. Sierra if he had any such illegal contraband in his truck. Mr. Sierra said he did not. The officer then asked Mr. Sierra if he could search the truck. Mr. Sierra said he could. In the sleeper compartment of its cab, the officer found cocaine hidden under some plywood in a storage area.

Mr. Sierra was charged with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He filed a motion to suppress the drug evidence and, after an evidentiary hearing, the magistrate judge recommended that the motion be denied. The district court accepted that recommendation and denied the motion. Mr. Sierra then pled guilty and was sentenced to 108 months' imprisonment. In his plea agreement, Mr. Sierra reserved the right to challenge the district court's denial of his motion to suppress. He does so now.

3

## II.

"[W]hen reviewing the denial of a motion to suppress, we review findings of fact for clear error and the application of the law to those facts *de novo*." *See United States v. Segura-Baltazar*, 448 F.3d 1281, 1289 (11th Cir. 2006). As an initial matter, we discern no clear error in the findings of fact, which the magistrate judge made after hearing testimony about and watching a video of the traffic stop, and which the district court adopted over Mr. Sierra's objections.

Mr. Sierra contends that the district court's denial of his motion to suppress was erroneous for three reasons: the officer stopped him because of his Hispanic ethnicity to look for non-traffic criminal activity; the officer did not have reasonable suspicion to detain him beyond what was necessary to issue the warning citation; and his consent to the search was not voluntary.[1] Mr. Sierra's arguments fail, as we explain.

### A.

---

[1]  Mr. Sierra also briefly argues that "his statements to law enforcement after his arrest were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)." Because he has not elaborated any arguments on the merits of this issue—by, for example, telling us exactly which statements he believes are inadmissible under *Miranda* and why—it is waived. *See, e.g.*, *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1280 n.41 (refusing to consider "bald and conclusory" statements). For the same reason, Mr. Sierra has also waived any challenge to the scope of the search.

4

Mr. Sierra concedes that he has not provided any evidence to support his claim of selective enforcement, offering only his counsel's "good faith belief" that the traffic stop was ethnicity-based and pretextual. Even if he could produce some evidence to back up that belief, however, the Supreme Court has "conclusively refute[d] the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred." *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) (citing *Whren v. United States*, 517 U.S. 806, 811–12 (1996)). "Thus, the only question for purposes of examining the constitutionality of [a] stop is: Did [the officer] have probable cause to believe that a traffic violation had occurred?" *Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004). Here, the officer certainly had probable cause to stop Mr. Sierra: he observed Mr. Sierra's truck cross over the highway fog line several times, which is a traffic violation. *See, e.g.*, Ala. Code § 32-5A-88; Ala. Code § 32-6-49.3(21)(b); *United States v. Harris*, 928 F.2d 1113, 1116 (11th Cir. 1991) (finding probable cause where officer stopped motorist for twice weaving into emergency lane). That probable cause forecloses an Equal Protection claim.

## B.

Mr. Sierra next argues that the officer lacked reasonable suspicion to detain him after issuing the warning citation. But reasonable suspicion is not the only thing

that can justify "questioning beyond that related to the initial stop"—such questioning is also permissible "if the initial detention has become a consensual encounter." *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). A traffic stop becomes a consensual encounter when a reasonable person "would have felt free to terminate" it under the totality of the circumstances. *See United States v. Ramirez*, 476 F.3d 1231, 1240 (11th Cir. 2007). Although not itself determinative, we have deemed an encounter consensual where an officer had returned a motorist's paperwork and their subsequent exchange appeared cooperative and non-coercive. *See id.* That is what happened here. As the initial traffic stop was coming to a close and Mr. Sierra moved to leave the police car with his warning and documentation, the officer asked if he could pose another question to him. Mr. Sierra said yes and remained in the car with his door ajar. At that point, "the exchange [became] cooperative in nature" because Mr. Sierra "had everything he reasonably required to proceed on his journey" but chose to answer the officer's questions instead of ending the encounter. *See id.* A reasonable person in Mr. Sierra's situation would have felt free to leave, and the fact that Mr. Sierra stayed does not transform the subsequent conversation into an unlawful detention.

## C.

Finally, Mr. Sierra argues that he did not voluntarily consent to the search of

6

his truck. "In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). We evaluate the totality of the circumstances by looking at "several indicators, including the presence of coercive police procedures" and "the defendant's cooperation with the officer." *See id.* A district court's determination that consent was voluntary is a finding of fact that we will not disturb absent clear error. *See id.*

The magistrate judge's determination that Mr. Sierra's consent was voluntary, which the district court adopted, is not clearly erroneous. When he consented to the search, Mr. Sierra's license was not being withheld. He was not being detained until a drug-sniffing dog could arrive. He was not under arrest, handcuffed, or in the back of the patrol car. Instead, Mr. Sierra had all of his necessary paperwork and was—by his own choice—sitting in the front seat of the cruiser, door ajar, talking to the officer. Although Mr. Sierra argues that he "misunderstood the consequences" of the search, the magistrate judge found nothing in the record to support such a contention. The magistrate judge, after considering evidence from the hearing and watching a video of the exchange, determined that Mr. Sierra was polite during the stop, could communicate with the officer, answered all of his questions, expressed an understanding of the circumstances, and had sufficient intelligence to

7

comprehend the consequences of consenting to a search. Given these facts, the conclusion that Mr. Sierra voluntarily consented is not error, let alone clear error. *See United States v. Schuster*, 684 F.2d 744, 747 (11th Cir. 1982) (rejecting argument that consent was not voluntary because defendant did not know informant was working with law enforcement and "therefore had no conception of the consequences of giving" informant consent to enter apartment).

## III.

The district court's denial of Mr. Sierra's motion to suppress is affirmed.

**AFFIRMED.**