United States Court of Appeals, Eleventh Circuit.

No. 95-6356.

John Thomas RILEY, Jr., Plaintiff-Appellant,

v.

The CITY OF MONTGOMERY, ALABAMA, a municipal corporation, Frank F. Bertarelli, B.H. Davis, Jerome M. Wooten, Michael G. Jones, et al., Defendants-Appellees.

Jan. 30, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-92-A-1340-N), W. Harold Albritton, III, Judge.

Before EDMONDSON, Circuit Judge, FAY, Senior Circuit Judge, and ALDRICH[*], Senior District Judge.

EDMONDSON, Circuit Judge:

Plaintiff appeals the district court's grant of summary judgment for Defendants on his Section 1983 and state law malicious prosecution claims based on alleged Fourth Amendment violations and on the resulting criminal convictions. We affirm the district court's ruling on the constitutional validity of the two stop and searches at issue but vacate its ruling on allegations that one of the Defendants—contrary to the Constitution—planted evidence.

I.

This action arises from two stop and searches that resulted in police finding cocaine and, later, in convictions of Plaintiff for drug charges. After an investigation into corruption within the pertinent narcotics unit, the government dismissed charges against Plaintiff; and he filed this action alleging a violation of his constitutional rights and malicious prosecution.

[*]Honorable Ann Aldrich, Senior U.S. District Judge for the Northern District of Ohio, sitting by designation.

A. *19 May 1989*

On 19 May 1989, Montgomery Police Department ("MPD") Officers Davis and Bertarelli stopped Plaintiff John Riley, Jr. while Plaintiff was driving an automobile they had under surveillance. After conducting a pat-down, Davis asked Plaintiff if he had a gun. Plaintiff indicated that he had one in the car. Another officer then retrieved a .357 Magnum pistol from inside Plaintiff's car and found a cloth bag containing cocaine. As a consequence, Plaintiff was later convicted on federal charges of possession of cocaine with intent to distribute and of possession of a firearm during a drug transaction.

According to Defendants, Bertarelli received an anonymous phone call indicating that a young, black male named Riley was dealing cocaine out of a beige, four-door Hyundai at the corner of French and Decatur Streets and that he was armed with a .357 Magnum. Bertarelli relayed the information to the other officers present. Davis said that he had received similar information from a confidential informant. The Davis informant (hereinafter "Mr. B")[1] had said that, while conducting a controlled buy for Davis, he observed a man leaving the drug house with cocaine, commenting on its quality. Mr. B saw the man get into a Hyundai; Mr. B took down the license number and gave it to Davis. Several officers then went to the specified intersection and found a beige four-door Hyundai with the license number Mr. B had given Davis. According to Plaintiff, the police officers fabricated both of the tips.

---

[1]The informant was identified as "N-766" in MPD records and as "Mr. B" by the district court for purposes of the present action.

B. *20 July 1989*

On 20 July 1989, Officers Jones and Wooten passed Plaintiff and another man in a car going the other way. Jones and Wooten turned their car around and began following Plaintiff. According to Defendants, Wooten had received a tip that Plaintiff was in a blue and white Buick Electra 225 (the car Jones and Wooten found him driving) and was transporting cocaine. Plaintiff says Wooten falsified the tip.

Though the officers were driving an unmarked car, Plaintiff recognized them. According to Plaintiff, his passenger then told him that the passenger had drugs in the car. Plaintiff sped up, going approximately 60 miles an hour in a residential area. Plaintiff kept speeding around the block until, according to him, all of the drugs had been thrown out of the car.

After stopping Plaintiff and his passenger, the officers placed them against the car's trunk and conducted a pat-down. Jones then conducted what he characterizes as a "quick gun sweep" of the front seat area. After finding nothing, Jones went to look for some of the objects thrown out of the car. At this point, Wooten searched the car and claims to have found a bag of cocaine between the door and the driver's seat. Plaintiff says that Wooten planted the cocaine. Based on the cocaine found in the car, Plaintiff was charged, in federal court, with possession of cocaine and convicted of aiding and abetting after the fact.[2]

---

[2]Jones's search of the side of the road resulted in the seizure of cocaine that had been thrown out of the car window. This evidence, however, was not used in Plaintiff's criminal conviction.

C. *Dismissal of Charges Against Plaintiff*

In December 1989, the MPD chief asked that the state begin an investigation into the MPD Narcotics and Intelligence Unit. That investigation uncovered evidence of extensive abuse involving the fund used to pay confidential informants for tips, including falsifying the identity of informants. The investigation discovered that police officers had recorded informant money as being transferred to non-existent informants, presumably pocketing the money themselves.

In August 1992, a magistrate judge recommended granting Plaintiff a new trial on both of his earlier federal convictions. The magistrate judge concluded for the 20 July search that, "[h]ad the information which this Court now possesses about Wooten, *i.e.,* that he routinely falsified records and may well have lied about the existence of a confidential informant, been presented to the trial judge and jury, it is highly unlikely that the defendant would have been convicted." (Recommendation, pp. 14-15.)[3] Later, the district court granted the United States Attorney's motion to dismiss the indictments.

D. *Procedural History of this Case*

Plaintiff filed the present complaint against the four officers involved in the two incidents (collectively "Police Defendants") alleging, among other things, violations of 42 U.S.C. § 1983 and malicious prosecution under Alabama law. Plaintiff also

---

[3]The magistrate judge recommended a new trial for Plaintiff for the conviction arising out of the 19 May incident because Wooten had testified at that trial on Plaintiff's pattern of involvement with drugs.

named the City of Montgomery and the commander of the Narcotics and Intelligence Unit, the police chief, and—in an amended complaint—the mayor, in both their official and individual capacities (collectively "City Defendants") under Section 1983. The district court dismissed Plaintiff's claims against City Defendants in their individual capacities early in the litigation.

Later, the district court granted summary judgment to all Defendants on all counts, except the malicious prosecution claim against Wooten based on Plaintiff's claim that Wooten planted the cocaine. The district court also entered judgment pursuant to Fed.R.Civ.P. 54(b), and Plaintiff appealed.

## II.

A warrantless weapons search of a suspect and his car, pursuant to a limited detention, does not violate the Fourth Amendment if the police have reasonable articulable suspicion to justify such a limited detention. *Michigan v. Long,* 463 U.S. 1032, 1049-52, 103 S.Ct. 3469, 3481-82, 77 L.Ed.2d 1201 (1983); *Terry v. Ohio,* 392 U.S. 1, 26-28, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). A *Terry* stop can also be used to investigate those suspected of being in the commission of a crime. *Adams v. Williams,* 407 U.S. 143, 145-49, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972) (drugs and concealed weapon). Pursuant to a *Terry* stop, the police are entitled to search the passenger compartment of the detainee's vehicle for weapons. *Michigan v. Long,* 463 U.S. 1032, 1051-52, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983).

As both of the encounters here were, at the pertinent time, limited detentions, the relevant question is whether the police had

"reasonable suspicion" in detaining Plaintiff. Plaintiff argues that *Terry* stops, to be proper, must follow chance encounters between the police and the suspect. Plaintiff has pointed us to no authority, however, to support his unique view that there is such a "chance encounter" requirement; and we are aware of nothing to support the idea. We thus look to the two stop and searches and determine whether the officers involved had "reasonable suspicion" and whether the scope of the weapons searches attendant to the stops exceeded the permissible scope.

A. *The 19 May Stop and Search*

Plaintiff contends (1) that Mr. B's deposition establishes a triable issue of material fact on whether Davis lied about getting a tip and (2) that the tips, if given, were unreliable. As the district court noted, however, Plaintiff presented no evidence to contradict Bertarelli's testimony about his anonymous tip. About the Davis tip, even assuming we were to consider Mr. B's deposition (which is not properly before us),[4] any "conflicts in the evidence" concern only minor discrepancies in the details provided by Davis and Mr. B—such as whether Mr. B knew the person to whom Plaintiff was delivering cocaine—and do not support a reasonable inference

---

[4]Defendants have moved to strike those portions of Plaintiff's brief which refer to evidence, including Mr. B's deposition, that was submitted to the district court after it had granted Defendants's motions for summary judgment and, accordingly, was stricken by the district court as untimely. We grant Defendants' motion for those portions of Plaintiff's brief which refer to "evidence" that is not in the record. *See Diversified Numismatics v. City of Orlando, Fl.,* 949 F.2d 382, 384 (11th Cir.1991) ("[A]ppellants should not have referenced material not in the record, and we will not consider any non-record evidence or arguments based upon non-record evidence."); F.R.A.P. 28(a)(4) (statements of fact must refer to record).

that Davis and Mr. B fabricated the entire story.

In addition, Plaintiff's theory of the incident is inherently incredible and could not support reasonable inferences sufficient to create an issue of fact. No evidence shows that the MPD had contact with Plaintiff before the incident or had reason to go to the pertinent location or to stop Plaintiff's car absent a tip. From this record, no reason exists to believe that, before 19 May, any member of the MPD Narcotics and Intelligence Unit even knew who Plaintiff was.

As for the reliability of the tips, under *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 307 (1990), an anonymous tip, corroborated by independent police work, can be sufficient to constitute reasonable articulable suspicion. In *White,* a police officer received an anonymous tip that Vanessa White would be leaving a particular apartment in a brown Plymouth station wagon with a broken tail light and transporting cocaine, in a brown attache case, to a particular motel. The officer and his partner watched the location and observed a brown Plymouth station wagon with a broken tail light in the parking lot. White entered the car, empty-handed, and started to drive the most direct route to the motel before she was stopped by a patrol car. The *White* Court noted that "not every detail mentioned by the tipster was verified, such as the name of the woman or the precise apartment from which she left." *Id.* at 331, 110 S.Ct. at 2416. The police did, however, confirm that the woman left the particular building, got into the described vehicle and drove in the most direct route to the motel. So, the Court held that, under the "totality of the

circumstances," this anonymous tip, *partially* corroborated by independent police work, was sufficient to constitute "reasonable suspicion." *Id.*

In the present case, Bertarelli's anonymous tip, corroborated both by a tip from one of his partner's confidential informants (Mr. B) and by independent police work, shows even greater indicia of reliability and gave Bertarelli and Davis an even greater basis for "reasonable suspicion." The anonymous tipster indicated that Plaintiff was transporting cocaine. After a 45-minute stakeout of the exact location provided by this informant, Plaintiff, a young, black male named Riley, entered a vehicle matching the informant's description. Davis' confirming tip also gave the exact license plate number of the vehicle Plaintiff was driving. In the light of the totality of the circumstances, independent police work corroborated both the anonymous tip Bertarelli received and the confirming tip from Davis' informant and provided ample basis for "reasonable suspicion."

B. *The 20 July Stop and Search*

Disregarding evidence of Wooten's tip, the district court found and concluded that the undisputed facts about the 20 July encounter established reasonable suspicion in that (1) Plaintiff accelerated well past the speed limit when he spotted the officers and (2) the officers observed the passenger throwing items out of the window and were aware of the recent arrest in which Plaintiff had been found with cocaine and a handgun.

Plaintiff argues that (1) the stop was "pretextual" and (2) the second search of the car, by Wooten, was impermissible.

Plaintiff refers to the deposition of Wooten (in which he states that he and Jones would not have stopped Plaintiff but for the tip Wooten received) and claims the officers decided to stop Plaintiff well before they saw him speeding, that is, the stop was pretextual.

Mere surveillance or pursuit is no "seizure"; and the relevant inquiry is whether, at the time the police pulled Plaintiff over, the stop and search violated the Fourth Amendment. *See Brower v. County of Inyo,* 489 U.S. 593, 595-97, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.").

In this circuit, we have historically held that the standard for determining if a traffic stop was "pretextual" is whether "a reasonable officer *would* have made the seizure in absence of "illegitimate motivation.' " *See United States v. Smith,* 799 F.2d 704, 708 (1986) (emphasis in original). But, in *Whren v. United States,* --- U.S. ----, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court rejected our former approach and held that the constitutional "reasonableness" of a traffic stop is determined irrespective of "intent," either of the individual officer involved, *id.* at ---- - ----, 116 S.Ct. at 1773-1774, or any theoretical "reasonable officer" (or, as the Court termed it, "virtual subjectivity"). *Id.* at ---- - ----, 116 S.Ct. at 1774-1776. The only question is whether the suspect's behavior gave rise to probable cause sufficient to justify the seizure. *Id.* at ----, 116 S.Ct. at 1775 ("[T]he Fourth Amendment's concern with "reasonableness' allows certain actions to be taken in certain

circumstances, *whatever* the subjective intent.") (emphasis in original).

In *Whren,* the Court held that the police had probable cause to pull over the suspect where he violated the traffic laws in this way:

> When the police car executed a U-turn in order to head back toward the truck, the Pathfinder turned suddenly to its right, without signalling, and sped off at an "unreasonable" speed. The police followed, and in a short while overtook the Pathfinder when it stopped behind other traffic at a red light.

*Id.* at ----, 116 S.Ct. at 1772. The present circumstance is more compelling in that (1) Plaintiff was already known to the police as a drug dealer who had a history of carrying a gun and (2) his passenger was throwing things (then thought to be, later shown to be, drugs) out of the window of the car as they sped through a residential neighborhood at approximately 60 miles an hour. *See also United States v. Strickland,* 902 F.2d 937, 940 (11th Cir.1990) ("[A] police officer may stop a vehicle "[w]hen there is ... probable cause to believe that a driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles.") (quoting *Delaware v. Prouse,* 440 U.S. 648, 655-57, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660 (1979)).

About Wooten's search, there can be no doubt that a weapon could have been hidden where Wooten looked and seemingly found not a gun, but cocaine: between the door and the driver's seat. *See Michigan v. Long,* 463 U.S. 1032, 1051-52, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983). That both Plaintiff and his passenger had been removed from the car and were in the officer's custody is inconsequential. *Id.* ("[I]f the suspect is not placed under

arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.")[5]  In addition, a vehicle search pursuant to *Michigan v. Long* is not constitutionally infirm just because it involves a second officer conducting a second search.  *See United States v. Gleason,* 25 F.3d 605, 608 (8th Cir.) (second weapons search by officer within permissible scope of search incident to an investigative stop), *cert. denied,* --- U.S. ----, 115 S.Ct. 283, 130 L.Ed.2d 199 (1994).

As is noted above, the district court concluded that a genuine issue of fact exists about whether Wooten actually found the cocaine in the car;  and, therefore, the district court denied Wooten's motion for summary judgment on Plaintiff's state law malicious prosecution claims.  If the jury were to find that Wooten planted the cocaine, this planting of false evidence could constitute a violation of Plaintiff's rights under the Federal Constitution and, accordingly, could give rise to liability under Section 1983.  *See e.g. Napue v. Illinois,* 360 U.S. 264, 268-70, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (due process right to fair trial);  *Whiting v. Traylor,* 85 F.3d 581, 585 (11th Cir.1996) (right to be free of unreasonable seizures);  *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir.1977) (due process right to fair trial). It was well established in 1989 that fabricating incriminating evidence violated constitutional rights.  *See, e.g., Schneider,* 552 F.2d at 595 (police officer's manufacturing of evidence violates

---

[5]The officers had taken custody of both Plaintiff and his passenger and were conducting a search pursuant to a valid *Terry* stop.  No one argues that Plaintiff and his passenger were under arrest at the time Wooten conducted his search.

due process right to fair trial regardless of prosecutor's ignorance of the falsified evidence). Accordingly, Wooten is entitled to no immunity for such claims. Thus, to the extent that the district court granted Wooten summary judgment on Plaintiff's Section 1983 claims based on the alleged planting of cocaine, the district court was mistaken. We vacate the judgment on this point for Wooten.

C. *The Grant of Summary Judgment to City Defendants*

Though the district court's opinion largely speaks in terms of qualified immunity, the district court did conclude, in its summary judgment order, that no constitutional violation—except possibly for Wooten's planting of evidence—occurred at all as a result of the two stop and searches.[6] The district court was right.

Plaintiff has advanced no theory under which City Defendants could be held liable for Wooten's alleged planting of cocaine in Plaintiff's car on 20 July. So, the district court correctly granted summary judgment to City Defendants. *See Menuel v. City of Atlanta,* 25 F.3d 990, 997 (11th Cir.1994) (dismissing action against municipality for lack of underlying constitutional

---

[6]For the 19 May incident, the district court held, at p. 57 of its Order, that "the May 19, 1989 investigative stop is constitutional under *White,* and the subsequent search was constitutional under *Michigan v. Long,* 463 U.S. at 1032 [103 S.Ct. at 3469]." For the 20 July incident, the district court found and concluded that "Jones and Wooten had probable cause to stop Riley [Plaintiff] on July 20, 1989," (Order, p. 58) and that "Jones did not violate Riley's constitutional rights in conducting the search," (Order, p. 59) and "Wooten had probable cause to search Riley's car on July 20, 1989." (Order, p. 59.) We do not reach the question of probable cause for Wooten's search, but affirm the conclusion that the search was lawful.

violation).

D. *Malicious Prosecution*

The elements of a malicious prosecution under Alabama law are (1) institution or continuation of a judicial proceeding, (2) by or at the instance of the defendant, (3) favorable termination of those proceedings, (4) malice, (5) lack of probable cause, (6) injury or damage. *Delchamps, Inc. v. Larry,* 613 So.2d 1235, 1238 (Ala.1992). A grand jury indictment is prima facie evidence of probable cause which can be overcome by showing that it was induced by misconduct. *Lumpkin v. Cofield,* 536 So.2d 62, 64 (Ala.1988). Given that reasonable suspicion existed for the two searches, the district court correctly concluded that Plaintiff failed to present evidence sufficient to create a triable issue of fact on "misconduct" for Bertarelli, Davis and Jones. So, the "lack of probable cause" element of the tort of malicious prosecution is missing.

AFFIRMED in part, VACATED in part, and REMANDED.