[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13818

_____

D. C. Docket No. 04-20037-CV-JLK

EUTIQUIO ELOY,

Plaintiff-Appellant,

versus

OFFICER GUILLOT,

Defendant-Appellee,

MAYOR OF MIAMI-DADE COUNTY,
CHIEF OF POLICE,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 11, 2008)**

Before ANDERSON, HULL and SILER,[*] Circuit Judges.

HULL, Circuit Judge:

In this 42 U.S.C. § 1983 action, Plaintiff-Appellant Eutiquio Eloy alleges

that Defendant-Appellee Officer Jean Paul Guillot fabricated evidence and planted

crack cocaine in order to arrest him on public drinking, disorderly intoxication,

resisting arrest, and cocaine charges, and sues for false arrest, false imprisonment,

and malicious prosecution. The district court granted summary judgment to

Guillot based on qualified immunity. After review and oral argument, we affirm

the district court's order in part and reverse in part.

## I. BACKGROUND

In May 2001, Eloy was arrested for attempted murder but released on

pretrial bond. This case involves Eloy's subsequent arrests on unrelated charges

while he was out on bond. We reference the attempted murder charge at different

points because it impacts Eloy's claims for damages.

## A. Fabricated Arrests

On February 8, 2002, Defendant Guillot, a Miami police officer, arrested

Plaintiff Eloy for public drinking, disorderly intoxication, and resisting arrest

without violence. Guillot's arrest affidavit alleged that: (1) Guillot observed Eloy

---

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

drinking from a can of beer; (2) Eloy's breath had "a strong odor of alcohol"; and (3) when Guillot placed Eloy in custody, Eloy "began to resist and to yell profanities."

However, Eloy was not drinking that day, and did not curse or struggle with Guillot.[1]  When Eloy asked Guillot why he was being arrested, Guillot responded with a crude phrase of Spanish slang that loosely translates to "because I felt like it."  Guillot also said he arrested Eloy "because [Guillot's] supervisor said so."

Guillot handcuffed Eloy, frisked him, and put him in the backseat of Guillot's police car.  On the way to the police station, Guillot stopped at an intersection and Eloy began to yell out the window to passersby that he was arrested for no reason.  Guillot removed Eloy from the car and had him stand with his back to the car.  A few minutes later, Guillot brought Eloy back and opened the door.  Inside the car was a clear plastic bag containing crack cocaine.  Guillot performed a field test, which was positive for cocaine.  Guillot then put Eloy in a different police car to be taken to the police station.

Guillot prepared another arrest affidavit that charged Eloy with possession of cocaine and possession of cocaine with intent to sell.  Guillot's affidavit averred

---

[1]"Even though the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case, our analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff."  Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (quotation marks and citations omitted).

that Eloy had tossed the bag of cocaine onto the floorboard when Guillot opened the back door of the car. But Eloy did not possess any cocaine, and the cocaine was not in the car until Guillot brought him back to the car.

## B.   Bond Revocation and Prosecutions

As a result of the February 8, 2002 fabricated arrests, Eloy's pretrial bond was revoked in the attempted murder case on February 11, 2002. Eloy was arraigned on the misdemeanor charges of public drinking, disorderly intoxication, and resisting arrest without violence. Those charges were nolle prossed on March 25, 2002.[2] On March 1, 2002, Eloy was arraigned on the two felony cocaine-related charges arising from the February 8, 2002 arrests.

Eloy did not post bond for his February 8, 2002 arrests. From his February 11, 2002 bond revocation until June 13, 2002, Eloy remained incarcerated, awaiting a trial on the attempted murder charge.

On June 13, 2002, the jury convicted Eloy in the attempted murder case. The state court sentenced Eloy to twenty-five years in prison, with credit for the time he served in prison from February 11, 2002 (the bond revocation) to June 13,

---

[2]Eloy's briefs do not identify the arraignment date on the misdemeanor charges, and the record contains conflicting evidence as to the arraignment date. The Waiver of Arraignment form indicates that arraignment occurred on March 25, 2002, the same date that the misdemeanor charges were dropped. However, the prosecutor in Eloy's attempted murder and cocaine possession cases testified that Eloy was arraigned on the misdemeanor charges on February 12, 2002. For purposes of this opinion, we need not resolve this factual dispute.

2002 (the date of conviction). He is currently serving that sentence.

On January 29, 2003, prosecutors nolle prossed the two cocaine-related charges.

## C.    Section 1983 Action

In 2004, Eloy filed a § 1983 complaint against Guillot. Eloy's complaint alleged that Guillot planted the cocaine and lied in his arrest affidavits, and sued for false arrest, false imprisonment, and malicious prosecution in violation of Eloy's constitutional rights.[3] Guillot moved for summary judgment, asserting that qualified immunity barred Eloy's claims. The district court denied the motion, and Guillot filed an interlocutory appeal, which this Court dismissed. See Eloy v. Guillot, No. 05-15506, slip op. at 5 (11th Cir. Aug. 18, 2006). This Court concluded that the district court's order denied summary judgment because the case required more factual development and thus was not an appealable final order. Id. at 4-5.

On remand, the parties engaged in more discovery, and Guillot renewed his

---

[3]It is undisputed that Eloy was detained upon his arrests of February 8, 2002. Moreover, Eloy's § 1983 false imprisonment claim arises merely from "[a] detention on the basis of a false arrest." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996). Under the facts of this case, therefore, Eloy's false imprisonment claim is functionally indistinct from his false arrest claim. For simplicity, our discussion will subsume Eloy's false imprisonment claim within his false arrest claim, and refer only to the latter.

motion for summary judgment, which the district court granted. Eloy appealed.[4]

## II. DISCUSSION

### A. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks omitted). A government official claiming qualified immunity must first establish that he was acting within his discretionary authority. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). If so, the plaintiff bears the burden of showing that qualified immunity is inappropriate. Id. at 1358. A two-part test ensues: First, the court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Vinyard, 311 F.3d at 1346 (alteration in original) (quotation marks omitted). Second, if under the plaintiff's version of the facts a constitutional violation did occur, "the next . . . step is to ask whether the right was clearly established." Id. (quotation marks omitted).

It is undisputed that Guillot was acting within his discretionary authority

[4]"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiff[] and then answering the legal question of whether Defendant[] [is] entitled to qualified immunity under that version of the facts." West v. Tillman, 496 F.3d 1321, 1326 (11th Cir. 2007).

when he arrested Eloy. Hence, we examine whether Eloy has established a violation of his constitutional rights and, if so, whether the law was clearly established.

## B. False Arrest Claim

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990)). More specifically, an arrest made without probable cause runs afoul of the Fourth Amendment's prohibition of unreasonable searches and seizures. Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007).

It is undisputed that on February 8, 2002, Guillot arrested Eloy without a warrant. Moreover, under Eloy's version of the facts, he did nothing to give Guillot probable cause to arrest him. Eloy was not drinking, did not resist his arrest, and did not possess any crack cocaine. Instead, Guillot intentionally lied in the arrest affidavits and fabricated evidence because Guillot and/or his supervisor wanted to arrest Eloy, who had made bond on his attempted murder charge. Therefore, Eloy's version of the facts establishes a warrantless arrest without probable cause and thus a Fourth Amendment violation.[5]

---

[5]To overcome a police officer's qualified immunity, the standard is whether arguable, not actual, probable cause existed based on the information known to the defendant officer at the

7

As with any constitutional tort, however, the plaintiff must also establish causation and damages in order to recover.  See Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000); Jones v. Cannon, 174 F.3d 1271, 1287 (11th Cir. 1999).  A false arrest claim "cover[s] the time of detention up until issuance of process or arraignment, but not more."  Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994) (quotation marks omitted).  Therefore, the potential damages period for Eloy's false arrest claim operates from the date of his arrests–February 8, 2002–until the date of his arraignments on the fabricated charges.[6]

Guillot contends that Eloy cannot show any actual injuries during any of this period because he was simultaneously incarcerated on the attempted murder charge.  However, Guillot's argument wholly ignores the three-day period–February 8 to 11–in which Eloy was jailed only for the fabricated charges.  Thus, Eloy has a viable compensatory damages claim based on actual injuries arising from and caused by his false arrest from February 8 to 11, 2002.[7]

time.  Jones v. Cannon, 174 F.3d 1271, 1283 & nn.3-4 (11th Cir. 1999).  The arguable probable cause standard applies in the "clearly established law" prong of the qualified immunity analysis.  See Draper v. Reynolds, 369 F.3d 1270, 1276 n.7 (11th Cir. 2004) ("Given our conclusion that Reynolds had actual probable cause and no constitutional violation occurred, we need not address the arguable probable cause doctrine and whether a law enforcement officer reasonably could have believed that probable cause existed for purposes of determining the second prong of the qualified immunity test.").

    [6]See supra note 2.

    [7]See Slicker v. Jackson, 215 F.3d 1225, 1229-30 (11th Cir. 2000) (stating that "compensatory damages under § 1983 may be awarded only based on actual injuries caused by

Furthermore, the February 11 revocation of Eloy's pre-trial bond on the attempted murder charge was <u>solely</u> due to the fabricated charges. In other words, but for the fabricated charges, Eloy would have remained free on pre-trial bond on the attempted murder charge.[8] Thus, under the particular facts here, we reject Guillot's argument that Eloy's February 11 bond revocation on the attempted murder charge bars his claim for compensatory damages occurring after February 11.

The more difficult issue, however, is the effect of the undisputed fact that Eloy subsequently received jail credit on his attempted murder <u>sentence</u> for his incarceration from February 11, 2002 to June 13, 2002, the date of his attempted murder conviction. While the February 8 fabricated charges caused the revocation of Eloy's pre-trial bond, they did not cause his attempted murder <u>sentence</u> and, indeed, are unrelated to that sentence. Because as of February 11 Eloy effectively was serving a 25-year <u>sentence</u> on his attempted murder conviction, Eloy is unable to show any actual injuries arising from or caused by the fabricated charges for the

---

the defendant," explaining that compensatory damages may include more than direct monetary, out-of-pocket loss and other monetary harms, and discussing differences between compensatory and nominal damages in § 1983 claims).

[8] <u>Cf.</u> <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1557 (11th Cir. 1994) (stating plaintiff cannot show actual injuries and recover compensatory damages "merely by showing that he was incarcerated on one illegitimate charge; he would also have to show that, but for that illegitimate charge, he would have been released"). Under Eloy's version of the facts, but for the fabricated February 8 charges, he would have remained free on pretrial bond.

9

time period after February 11.  In other words, the actions of the jury (in convicting

Eloy of the unrelated attempted murder charge) and the judge (in crediting all of

Eloy's post-revocation time in jail toward his 25-year <u>sentence</u>)[9] broke the chain of

causation that formerly linked Guillot's fabricated charges to Eloy's alleged

injuries.  <u>See</u> <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1557 (11th Cir. 1994) ("[A]bsent proof

of a specific, actual injury caused by the defendants' conduct, [plaintiff] is not

entitled to compensatory damages.").

Therefore, we conclude that under his version of the facts, Eloy has

established a § 1983 false arrest claim and may seek compensatory damages for his

injuries during the time frame from February 8, 2002 until February 11, 2002.

## C.    Malicious Prosecution Claim

For any § 1983 claim for malicious prosecution, there must exist an

independent source for the federal right allegedly violated.  <u>See</u> <u>Albright v. Oliver</u>,

510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (plurality opinion).[10]  This Court has

---

[9]There is no indication in the record that Eloy was given credit toward his attempted murder sentence for the three days he spent in jail between his February 8, 2002 arrests and his bond revocation.  Therefore, Eloy's attempted murder conviction and sentence does not affect his false arrest claim for the time period of February 8 to 11, 2002.

[10]Section 1983 itself provides no substantive rights, but only serves as a vehicle "for vindicating federal rights elsewhere conferred."  <u>Albright</u>, 510 U.S. at 271, 114 S. Ct. at 811 (quotation marks omitted).  The Supreme Court held that substantive due process could not serve as the basis for a § 1983 malicious prosecution claim, but left open the question whether the Fourth Amendment could do so.  <u>Id.</u> at 275, 281, 286, 114 S. Ct. at 813-14, 817, 819.

concluded that the Fourth Amendment can serve as the basis for a § 1983 malicious prosecution claim where the plaintiff, as part of the commencement of a criminal prosecution, is unlawfully and forcibly detained, stating that:

> [l]abeling . . . a section 1983 claim as one for a "malicious prosecution" can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead.

Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996). When a § 1983 plaintiff is unlawfully seized, and that seizure follows and derives from a criminal prosecution itself, the Fourth Amendment violation for which the plaintiff seeks redress "is of the kind making a section 1983 claim based on the violation analogous to the tort of malicious prosecution," and the "injuries caused by the unlawful seizure may include those associated with the prosecution." Id. at 585-86. In order for the seizure to derive from the prosecution, the plaintiff must show he was seized "in relation to" the malicious prosecution. See Kingsland, 382 F.3d at 1235.

Accordingly, to prevail on a § 1983 malicious prosecution claim, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, (2) an unlawful seizure in violation of his Fourth Amendment rights, and (3) that the unlawful seizure was "in relation to the prosecution." Kingsland, 382 F.3d at

11

1234-35.

One element of a common law malicious prosecution claim is the commencement or continuation of a judicial proceeding.[11] Thus, the earliest Eloy's malicious prosecution claim could begin is the date of his arraignments on the fabricated February 8, 2002 charges. Furthermore, unlawful incarceration after arraignment on fabricated charges would qualify as an unlawful seizure.[12]

However, Eloy must still establish this requirement: that his "injuries, due to that seizure, follow as the prosecution goes ahead." Whiting, 85 F.3d at 584. A § 1983 malicious-prosecution plaintiff's injuries "may include those associated with the prosecution," but regardless, they must be caused by the unlawful seizure.

---

[11]Under Florida law, which governs here, there are six elements to a common law malicious prosecution claim:
> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland, 382 F.3d at 1234.

[12]In Kingsland, the plaintiff brought, inter alia, a § 1983 malicious prosecution claim, alleging that the defendant police officers had fabricated evidence used to prosecute her for DUI. 382 F.3d at 1225, 1234. Kingsland was released on bond the day after her arrest; thereafter she was not incarcerated, but she was obligated to appear in court at her arraignment and at two subsequent hearings. Id. at 1235. We held that these facts did not constitute a sufficient seizure in relation to the prosecution. Id. at 1236. In contrast, Eloy was jailed at the time of his February 8 arrest, never posted bond on the fabricated charges, and remained in jail throughout the time period in issue. Further, there was no evidence to support the prosecution other than the defendant Guillot's fabricated evidence and affidavits.

12

Id. at 586.  Furthermore, they must be caused by the named defendants in the case.

See id. at 586 n.10 ("Recovery of damages is limited to those injuries proved to be

caused by the defendants.") (emphasis omitted).

As discussed earlier, as of February 11, 2002 Eloy was effectively serving a

25-year sentence on his attempted murder conviction.  The arraignments on the

fabricated charges all occurred after that February 11 date.[13]  Thus, Eloy is unable

to show actual injuries arising from or caused by the malicious prosecution.

Without that causal link, Eloy cannot prove compensatory damages flowing from

his post-February 11 arraignments and prosecution.

Nevertheless, Eloy's failure to show such an actual injury does not entitle

Guillot to summary judgment on Eloy's malicious prosecution claim.  Because

Eloy has shown the malicious prosecution violated his constitutional rights under

his version of the facts, he may still seek nominal damages even though he suffered

no compensable injury.[14]  See Kelly, 21 F.3d at 1557 ("When constitutional rights

are violated, a plaintiff may recover nominal damages even though he suffers no

compensable injury.").[15]

---

[13]See supra note 2.

[14]We also reject Guillot's argument that Eloy's malicious prosecution claim is barred by
Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

[15]See Carey v. Piphus, 435 U.S. 247, 248, 266-67, 98 S. Ct. 1042, 1044, 1053-54 (1978)
(explaining nominal damages and stating that a § 1983 plaintiff not suffering an actual injury is

Therefore, we conclude that under his version of the facts, Eloy has established a § 1983 malicious prosecution claim and may seek nominal damages for the time frame from the dates of his arraignments on the fabricated charges until the dates those charges were dismissed.

**E.    Clearly Established Law**

Having determined that Eloy has demonstrated, for summary judgment purposes, a constitutional violation on his false arrest and malicious prosecution claims, we now turn to the final stage of qualified immunity analysis:  whether the law was clearly established.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Vinyard, 311 F.3d at 1350 (emphasis omitted).  Put another way, the defendant must have fair notice of his conduct's unconstitutionality, which derives from one of the following sources:  (1) the obvious clarity of constitutional or statutory language; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not fairly

not entitled to recover substantial non-punitive damages for a constitutional violation, but instead may be awarded "a nominal sum" of money "not to exceed one dollar"); Slicker, 215 F.3d at 1229 (stating that "in the absence of actual injury entitling the plaintiff to compensatory damages, a § 1983 plaintiff whose constitutional rights are violated by the defendant is entitled to nominal damages").  While this opinion addresses Eloy's claims for compensatory and nominal damages, which are sufficient for the summary judgment to be reversed, we do not reach the issue of punitive damages and leave that to the district court.

14

distinguishable. Id. at 1350-52. For case law, we look only to decisions of the United States Supreme Court, this Court, or the highest court of the relevant state that were issued as of the date of the conduct in question. Id. at 1351-52 & n.22.

Under Eloy's version of the facts, Guillot knew that there was not even arguable probable cause to arrest Eloy, but intentionally lied in the arrest affidavits and fabricated evidence in order to effect Eloy's arrests and prosecution anyway. The unconstitutionality of such conduct was clearly established as of February 8, 2002. See, e.g., Jones, 174 F.3d at 1285 ("[T]he law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause."); Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997) (holding, in the context of a plaintiff's § 1983 and state law malicious prosecution claims against police officers who allegedly planted cocaine in his car, that "[i]t was well established in 1989 that fabricating incriminating evidence violated constitutional rights" (citing, inter alia, Whiting v. Traylor)).

Therefore, we conclude that Guillot, at the summary judgment stage, is not entitled to qualified immunity as to Eloy's false arrest claim for compensatory damages from February 8 to 11, or as to Eloy's malicious prosecution claim for

15

nominal damages.

### III. CONCLUSION

For the reasons set forth above, we reverse the district court's order to the extent that it grants summary judgment to Guillot on Eloy's § 1983 false arrest claim for compensatory damages for the time period between February 8 to 11, 2002, but otherwise affirm as to the false arrest claim. We reverse the district court's order to the extent it granted summary judgment to Guillot on Eloy's § 1983 malicious prosecution claim for nominal damages, but otherwise affirm as to the malicious prosecution claim. We remand this case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**