[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15687
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-01533-JSM-TGW

JOHNNIE FITZGERALD HOWARD,

Plaintiff-Appellee,

versus

DAVID GEE,
Sheriff of Hillsborough County, et al.,

Defendants,

ROBERT MELTON,
RONALD HIGHSMITH,
Deputy Sheriffs of Hillsborough County,
in their individual and official capacities,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 25, 2013)

Before CARNES, Chief Judge, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Deputies Ronald Highsmith and Robert Melton, who are both correctional officers with the Hillsborough County Sheriff's Department, appeal the district court's denial of their motion for summary judgment. They contend that they are entitled to qualified immunity on Johnnie Howard's 42 U.S.C. § 1983 claim for malicious prosecution.

I.

Because Deputies Highsmith and Melton are appealing the denial of qualified immunity, we present the facts in the light most favorable to Howard. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) ("In conducting de novo review of the district court's disposition of a summary judgment motion based on qualified immunity, we are required to resolve all issues of material fact in favor of the plaintiff."). At the time of the events underlying this case, Howard was an inmate in the Falkenburg Road Jail in Hillsborough County, Florida. During lunch one day, he became upset because most of his soup had spilled onto his tray. Deputy Highsmith was supervising the inmates in the lunch area at that time, and Howard approached him to complain. Deputy Highsmith was busy attending to other matters and told Howard that he would have to deal with his problem later.

After a few minutes Howard walked up to Deputy Highsmith again to talk about his lunch, but Deputy Highsmith refused to help. After the last inmate had received his lunch tray, Howard approached Deputy Highsmith a third time to

2

complain about the spilled soup.  Deputy Highsmith told him that the other inmates had not complained about their lunches and directed Howard to leave him alone. Howard did not leave; instead, he asked Deputy Highsmith for a grievance form. Deputy Highsmith refused to give him one because Howard had filed a grievance report the week before that had caused Deputy Highsmith to get in trouble. Howard then asked to speak with the deputy's supervisor, but Deputy Highsmith refused and told Howard to get away from him.  Howard refused to leave.

Deputy Highsmith told Howard to go to a holding cell, but instead of walking toward the holding cell, Howard started to walk back to his assigned cell. Deputy Highsmith got up from his desk and tried to grab Howard, but Howard avoided him by stepping between several tables.  Deputy Highsmith came around the other side of the tables to try to grab Howard again, but as he approached Howard both men tripped over a plastic cot on the floor, fell onto a stack of chairs, and fell to the ground.  Deputy Highsmith told Howard that he was in "serious trouble" and Howard was escorted to lockdown.  Both men were injured.  Howard suffered a superficial abrasion on his right leg and Deputy Highsmith broke his left wrist.

Deputy Highsmith filed an Inmate Disciplinary Report that, among other things, falsely accused Howard of striking him twice with a chair.  The report said that witness statements were available from several inmates who saw the

3

altercation and that "copies of all materials were forwarded to jail detective Melton for possible criminal prosecution." It also included a statement from Howard who said that he had only wanted a grievance form and that he did not hit Deputy Highsmith with a chair or refuse to go to the holding cell.

When Deputy Melton received the disciplinary report, he started an investigation. Relying solely on Deputy Highsmith's report, Deputy Melton decided to arrest Howard for aggravated battery on a law enforcement officer. At no point did Deputy Melton attempt to investigate Howard's side of the story or question witnesses. Howard was put on trial, convicted, and permanently reassigned to the most restrictive unit of the jail. Howard's conviction was overturned on appeal because, during the trial, Deputy Highsmith had improperly contacted a member of the jury. Howard v. State, 943 So. 2d 884 (Fla. Dist. Ct. App. 2006). The case was remanded for a second trial, which ended in Howard's acquittal.

Following that acquittal Howard sued Deputies Highsmith and Melton under 42 U.S.C. § 1983 alleging that: (1) Deputy Highsmith had retaliated against him for engaging in protected conduct; (2) Deputies Highsmith and Melton had conspired to violate his constitutional rights; (3) Deputy Highsmith had used excessive force against him; and (4) Deputies Highsmith and Melton had filed a

4

false report and subjected him to malicious prosecution.[1]  The district court dismissed Howard's retaliation and conspiracy claims for failure to state a claim on which relief could be granted.  The court also dismissed the excessive force and malicious prosecution claims against the deputies in their official capacities, but permitted those claims to proceed against them in their individual capacities.

Deputies Highsmith and Melton then moved for summary judgment. Without hearing from Howard after he missed several filing deadlines, the district court granted summary judgment in favor of the deputies on Howard's excessive force claim, concluding that judicial estoppel barred it.  On Howard's malicious prosecution claim, however, the court denied the deputies' motion for summary judgment based on qualified immunity.  Deputies Highsmith and Melton now appeal.

## II.

Deputies Highsmith and Melton contend that the district court erred in denying them qualified immunity on Howard's malicious prosecution claim.  We review de novo a district court's denial of qualified immunity.  Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010).  In conducting our review, we are required to "resolve all reasonable doubts about the facts in favor of

---

[1] Howard also sued David Gee, the Sheriff of Hillsborough County, and Deputy David Parish, alleging that they had negligently supervised Deputies Highsmith and Melton.  The district court dismissed Howard's claim against those defendants as barred by the statute of limitations.  That ruling is not at issue in this appeal.

5

the non-movant." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (quotation marks omitted). Qualified immunity shields government officials from civil liability for torts committed while performing their discretionary duties, unless their conduct violated clearly established statutory or constitutional rights. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

To receive qualified immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the relevant conduct took place. Lee, 284 F.3d at 1194. To determine that we ask: (1) whether the official was performing a function that, "but for the alleged constitutional infirmity," would have fallen within his "legitimate job description"; and (2) whether that function was carried out "through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265–66 (11th Cir. 2004). As a threshold matter — and despite Howard's argument to the contrary — both Deputies Highsmith and Melton have met those requirements. Deputy Highsmith's job was to supervise inmates, maintain jail security, and fill out incident reports as necessary. He was acting within his authority when attempting to detain Howard and reporting the incident. Deputy Melton's job was to investigate crimes committed by inmates, and he was acting within his authority when investigating that incident and recommending Howard for prosecution.

Because the deputies were acting within the scope of their discretionary authority, the burden shifts to Howard to demonstrate that qualified immunity is not appropriate. Lee, 284 F.3d at 1194. In evaluating whether a plaintiff has met that burden, we ask: (1) whether, taken in the light most favorable to the plaintiff, the facts show that the defendants' conduct violated a constitutional or statutory right; and (2) if so, whether that right was clearly established. Hadley, 526 F.3d at 1329. To satisfy that two-part test, Howard contends that, when the facts are viewed in the light most favorable to him, Deputies Highsmith and Melton's actions constitute malicious prosecution, a violation of his clearly established rights under § 1983. See Uboh v. Reno, 141 F.3d 1000, 1002–03 (11th Cir. 1998) (clearly establishing in 1998 that malicious prosecution is a constitutional tort cognizable under § 1983); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (reiterating in 2003, a year before the incident at hand, that malicious prosecution is a violation of the Fourth Amendment and a constitutional tort cognizable under § 1983). A malicious prosecution claim under § 1983 requires a plaintiff to prove both a violation of his Fourth Amendment right to be free from unreasonable seizures and the elements of the common law tort of malicious prosecution. Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Howard alleges that the deputies violated his Fourth Amendment rights by arresting him without probable cause, see Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th

7

Cir. 2010), and by falsifying facts and evidence to establish probable cause, see

Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997).[2]  Howard also

claims to have established the six elements of the tort of malicious prosecution

under Florida law:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland, 382 F.3d at 1234 (citing Burns v. GCC Beverages, Inc., 502 So. 2d

1217, 1218 (Fla. 1986)).  Deputies Highsmith and Melton each challenge

Howard's ability to prove his claim of malicious prosecution, and each offers

different reasons as to why.  We will address Howard's claims against each deputy

separately.

## A.  Deputy Highsmith

Deputy Highsmith contends that Howard can prove neither a violation of his

Fourth Amendment rights nor that Deputy Highsmith was the legal cause of his

---

[2] Deputies Highsmith and Melton do not contend that Howard, a prisoner who was incarcerated at the time of the 2004 incident, could not be seized under the Fourth Amendment given that he was already seized as an inmate.  They also do not contend that, when evaluating a public official's right to qualified immunity, a standard other than arguable probable cause should apply to seizures initiated in the prison context.  Because the deputies have not raised those issues, we will assume, for purposes of this appeal only, that Howard could be subjected to a Fourth Amendment seizure and that arguable probable cause, instead of some lesser quantity of suspicion, would be required to justify that seizure.

prosecution.  We disagree.  Viewing the facts in the light most favorable to Howard, Deputy Highsmith violated Howard's Fourth Amendments rights by filing a false incident report that led to Howard's arrest and prosecution.  See Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999) ("[T]he Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest . . . ."); Riley, 104 F.3d at 1253 (holding, in the context of a plaintiff's § 1983 and state law malicious prosecution claims against police officers, that "fabricating incriminating evidence violate[s] constitutional rights").  Though Deputy Highsmith insists that Howard hit him with a chair, there is evidence in the record, including sworn testimony by other inmate-witnesses, that supports Howard's version of events.  Because at this stage we resolve disputed facts in favor of Howard, we must credit the evidence showing that no attack occurred and draw the inference that Deputy Highsmith's report was false.[3]

As for the elements of the tort of malicious prosecution, Deputy Highsmith contests only whether he was the legal cause of Howard's prosecution.[4]  Arguing

---

[3] We recognize that at the conclusion of the case the evidence may show that Deputies Highsmith and Melton did not commit the offenses alleged.  We do not ourselves suggest that the deputies engaged in fabrication or abuse, but we must accept Howard's allegations as true for purposes of summary judgment. See Kingsland, 382 F.3d at 1228 n.9.

[4] Because Deputy Highsmith has not challenged Howard's ability to satisfy the other elements of the tort of malicious prosecution, arguments on those elements are waived for purposes of this appeal.  See Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003) (stating that issues not argued in a party's brief on appeal are waived).  That does not mean, however, that Deputy Highsmith is barred from making those arguments in further proceedings.

that he is not, Deputy Highsmith notes that, in the context of a false arrest by a law enforcement officer, we have held that intervening acts by "the prosecutor, grand jury, judge and jury" can break the chain of causation. Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989). That rule stems from the common-sense rationale that "[o]nce someone is arrested and . . . substantial evidence of the suspect's guilt comes to light, the police can do little or nothing to stop further proceedings." Id. at 1196. It thus makes little sense to hold an officer responsible for the later decision to prosecute. Id. That choice is made by others and based on evidence that exists apart from the officer.

Where those intervening acts result from an officer's deception, however, the chain of causation is not broken. Id. at 1195 (citing Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988), which held that the decision of a prosecutor to charge and a grand jury to indict did not shield a police officer who deliberately supplied misleading information). That holds true in cases where the sole basis for a prosecutorial decision is an officer's fabricated evidence. Unlike the officer mentioned above who uncovers evidence but cannot stop further proceedings, an officer who fabricates evidence may be the only one who can stop a prosecution. Applying that reasoning here and viewing the facts in the light most favorable to Howard, we conclude that Deputy Highsmith was the legal cause of Howard's prosecution. Under Howard's evidence, Deputy Highsmith fabricated the sole

10

evidence used to charge and indict him and then repeated those fabrications as the State's principal witness at his trial.

Finding that Howard has presented evidence from which a jury could find malicious prosecution and a violation of his Fourth Amendment rights, we also conclude that the district court correctly denied qualified immunity to Deputy Highsmith.

## B. Deputy Melton

Deputy Melton contends that Howard cannot show a violation of his Fourth Amendment rights.[5]  After viewing the facts in the light most favorable to Howard, we disagree.  Howard claims that Deputy Melton violated his Fourth Amendment right to freedom from unreasonable seizures by arresting him without probable cause.  Grider, 618 F.3d at 1256 ("[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment.").  To receive qualified immunity, Deputy Melton need not have had actual probable cause for Howard's arrest — only arguable probable cause.  Id. at 1257.  Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff."  Id.  (quotation marks omitted).  While

---

[5] Deputy Melton has not contested whether Howard can satisfy the elements of the tort of malicious prosecution, and any arguments on that issue are waived for purposes of this appeal. See Farrow, 320 F.3d at 1242 n.10.  That does not mean, however, that Deputy Melton is barred from contesting that issue in further proceedings.

11

the qualified immunity standard allows ample room for mistaken judgments, it does not protect "the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537 (1991) (quotation marks omitted). For example an officer who unreasonably and recklessly disregards evidence that exonerates a suspect cannot reasonably believe that probable cause exists. See Kingsland, 382 F.3d at 1233; see also Holmes v. Kucynda, 321 F.3d 1069, 1083–84 (11th Cir. 2003) (reversing the grant of summary judgment based on qualified immunity where factual questions existed as to whether police officers filed a recklessly false application for an arrest warrant).

In deciding that Deputy Melton did not have arguable probable cause for Howard's arrest, we find our decision in Kingsland to be instructive. In that case, several police officers responded to a car wreck involving another officer and Misty Kingsland. Kingsland, 382 F.3d at 1223. Once on the scene, the officers ignored Kingsland and her assertion that the police officer caused the wreck. Id. Accepting instead their colleague's statement that Kingsland was at fault, the arriving officer never bothered to listen to Kingsland's side of the story. Id. She was charged with driving under the influence and accused of causing the wreck. Id. at 1225. Kingsland had suffered a head injury in the wreck, and the charges against her proved baseless and were later dismissed. Id. Kingsland filed a lawsuit against the arresting officers alleging false arrest and malicious prosecution. Id. In

12

reversing the district court's grant of summary judgment based on qualified immunity, we concluded that Kingsland had raised a question of fact about whether, among other things, the arresting officers had failed to conduct a reasonable investigation and had ignored certain facts within their knowledge. Id. at 1231. Though we recognized that "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," we held that "an officer may not choose to ignore information that has been offered to him or her, such as Kingsland's assertions that [the police officer] ran the red light." Id. at 1229. "Nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts, such as . . . whether witnesses were available to attest to who was at fault in the accident." Id. Because the officers failed to take even the most basic investigatory steps, we concluded that the question of arguable probable cause could not be decided at the summary judgment stage. Id. at 1232–33

Like the officers in Kingsland, Deputy Melton concedes that he made little or no attempt to investigate the incident between Deputy Highsmith and Howard. He ignored Howard's version of events and talked to no witnesses, although court records reveal that at least two people who were readily available could have corroborated Howard's story. The only attention he gave to the investigation was to Deputy Highsmith's side of the story, as found in his brief incident report.

13

Because Deputy Melton neglected to talk to Deputy Highsmith, however, even that attention appears to have been cursory.  Deputy Melton has not established, for purposes of qualified immunity, that he conducted a reasonable investigation before charging Howard with battery on a law enforcement officer.  Because a fact question remains about whether Deputy Melton had arguable probable cause to arrest Howard, we affirm the district court's denial of qualified immunity.

### III.

As a final matter, Deputies Highsmith and Melton contend that the district court erred in denying their motion for summary judgment because Howard never filed a response.  The deputies appear to misunderstand the requirements for summary judgment.  Federal Rule of Civil Procedure 56(e)(3) states that if a party "fails to properly address another party's assertion of fact . . . , the court may grant summary judgment *if the motion and supporting materials . . . show that the movant is entitled to it*."  (emphasis added).  It follows that a district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004).  A district court must also "ensure that the motion itself is supported by evidentiary materials."  Id.  Here the district court's order

14

showed due consideration to the merits of the deputies' motion and the evidence presented.

**AFFIRMED.**